No. 88-116

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

HUBERT J. MASSMAN, d/b/a HORSKY BLOCK,
HUBERT J. MASSMAN, d/b/a MASSMAN LAW
FIRM, MILLER ENTERPRISES, INC., a
Montana corporation, and EPISCOPAL
DIOCESE OF MONTANA, a corporation,

Plaintiffs and Appellants,

-vs-

CITY OF HELENA, a Municipal Corporation,

Defendant and Respondent.

---

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Frank B. Morrison, Jr. argued; Morrison Law Firm,
Helena, Montana

For Respondent:

Robert Emmons argued; Emmons & Coder, Great Falls,
Montana

Submitted:  February 21, 1989

Decided:  May 2, 1989

Filed:

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Plaintiffs appeal from the jury verdict and subsequent judgment of December 23, 1987, and from the denial of their motion for a new trial by the First Judicial District Court, Lewis and Clark County. The jury found the City of Helena (City) was not negligent in failing to require an operating sprinkler system in the basement of the Spectrum Building prior to the time of the fire in the building. The jury also found that the spread of the fire to the adjacent Horsky Block Building was not caused by any negligent firefighting methods or procedures employed by the City. Defendant filed a cross-appeal from the final judgment.

We affirm the jury verdict, judgment entered, and District Court's denial of the motion for a new trial.

Appellant raised the following issues on appeal:

1. Did the District Court err in refusing plaintiffs' offered instruction stating that violation of a city ordinance is negligence per se?

2. Did the District Court err in refusing to allow plaintiffs to ask opinion testimony of two people disclosed as witnesses but not as experts?

3. Did the District Court err in refusing the rebuttal testimony of an expert called to dispute the City's evidence that it was not negligent in fighting the Spectrum Building fire?

4. Did the City improperly prejudice the jury by repeated mention of insurance during trial?

Respondent raised numerous cross-appeal issues, which we will address in our discussion of the four above-mentioned appeal issues, including the following:

2

1. Is the City exempted from any liability for the fire by the Public Duty Doctrine?

2. Is the City exempted from any liability for the fire by the grandfather clause in § 502 of the UBC?

3. Is the City exempted from any liability for the fire by general tort principles extending liability only to foreseeable actions?

On June 17, 1980, a fire started in the basement of the Spectrum Building in downtown Helena. The fire quickly spread to the adjacent Horsky Block Building and completely destroyed it. At the time of the fire, the Spectrum Building was being remodeled by its owner, Ben Brown.

The initial building permit obtained by Brown on May 22, 1979 authorized him to make up to $15,000 in alterations to the building. (Brown subsequently obtained various plumbing, electrical and mechanical remodeling permits.) Lewis Thorne, the building inspector for the City, later determined as a result of his regular biweekly inspections that Brown had exceeded those building alterations authorized. Consequently, Thorne issued a stop order on July 31, 1979. Brown then obtained two additional building permits, one on August 6, 1979 and the other on August 27, 1979, which enabled him to continue remodeling the old Coast to Coast store into various retail shops and a restaurant. These two permits allowed for additional alterations in the sum of $78,000. All building permits required Brown to work in compliance with City Ordinances. One such ordinance, incorporating the 1976 UBC, required an operational sprinkler system in the basements of remodeled buildings having a changed occupational character the same or more hazardous than the prior use. (§ 502, UBC (1976).)

3

Prior to a final inspection and a final certificate of occupancy, the City issued a temporary certificate which permitted Rose's Cantina to open its restaurant on the top floor of the remodeled Spectrum Building. This temporary certificate of occupancy was issued prior to the installation of an operational sprinkler system in the basement of the building. Pipes for the sprinkler system were on the basement floor, but not installed at the time of the fire. The riser for the system had been installed but it had not been connected to the sprinkler heads.

The fire was called in at 9:51 p.m. on June 17, 1980. Firefighters arrived on the scene minutes afterwards. Two firefighters attempted to get to the fire, located in the rear of the basement, from the one entrance located at the front of the basement. However, a sheet rocked partition had been placed just inside the basement and this blocked access to the fire. Firefighters thus were unable to directly treat the fire while it still was contained within the basement, and it quickly spread upwards and then to the adjacent Horsky Block Building. John Carroll, one of the two investigators hired to determine the cause of the fire, stated that had fire sprinklers been in place in the Spectrum Building basement, the fire would not have spread to the Horsky Block Building.

A later examination indicated the fire began in a basement storage closet under the stairs. No electrical appliances were in the immediate vicinity of this area. The origin location, the presence of various combustibles in the area of the fire origin, and the erected partition blocking firefighter access led fire investigators to conclude that the fire was incendiary (man-made) in origin. The parties did not dispute the incendiary nature of the fire.

4

Consequently, on December 7, 1987, the District Court granted summary judgment on the issue of the cause of the fire. The court, however, denied the City's motion for summary judgment on the issue of the duty owed to plaintiffs.

A jury trial began on December 14, 1987. The jury returned a verdict in favor of the City on December 17, 1987. Plaintiffs filed a timely motion for a new trial after final judgment was entered, but the court denied this motion. Plaintiffs then filed this appeal from the court's denial of a new trial and from the final judgment. Defendant cross-appealed.

I. VIOLATION OF A CITY ORDINANCE AS NEGLIGENCE PER SE

Appellants contend that their damages resulted from the City's negligence in failing to enforce section 3802(b)(1) of the 1976 UBC. They contend violation of the UBC, expressly adopted by City ordinance, constituted negligence per se and that the City should therefore be held liable for damages arising because of this violation. Appellants thus argue the District Court erred in refusing to offer a jury instruction on negligence per se.

Section 104(a) of the 1976 UBC generally requires all buildings altered after 1976, even if the buildings existed prior to 1976, to comply with all new building requirements provided in the UBC. The Spectrum Building as a preexisting building under extensive remodeling thus had to comply with the requirements of the UBC.

UBC requirements mandate the installation and maintenance of an operational, standard automatic fire-extinguishing system in the basement, and on every story, of all buildings such as the Spectrum Building which contained a large basement and was classified as a Group B2 building.

See, section 3802(b)(1), UBC (1976). As stated in section 3802(b), UBC:

> Standard automatic fire-extinguishing systems shall be installed and maintained in operable condition . . . [i]n every story, basement or cellar of all buildings except Groups R, Division 3 and M Occupancies when floor area exceeds 1500 square feet and there is not provided at least 20 square feet of opening entirely above the adjoining ground level in each 50 lineal feet or fraction thereof of exterior wall in the story, basement or cellar on at least one side of the building . . . If any portion of a basement or cellar is located more than 75 feet from openings required in this Section, the basement or cellar shall be provided with an approved automatic fire-extinguishing system.

Section 306 of the UBC provides guidance as to when this fire-extinguishing system must be installed. Section 306(a) generally states that a building may not be used or occupied "until the Building Official has issued a Certificate of Occupancy." Section 306(c), UBC. The Building Official may not issue such a certificate until a final inspection confirms the building's compliance with UBC requirements. No other UBC provisions expressly require the operation of a fire-extinguishing system prior to issuance of this final Certificate of Occupancy. We therefore hold that although the Building Inspector, acting on behalf of the City, had the duty of enforcing the requirement of an operational fire-extinguishing system, this duty did not arise until such time as the final Certificate of Occupancy was issued.

The remodeling of the Spectrum Building had not been completed at the time of the fire on June 17, 1980. No final

6

inspection or final Certificate of Occupancy had been issued prior to this time. The City had, however, issued a temporary Certificate of Occupancy which permitted the restaurant located on the top floor of the Spectrum Building to open for business. The UBC expressly authorizes the City to issue such a temporary certificate so that the finished portion of a building may be used before completion of the entire building. The UBC does not require the building to be in compliance with UBC requirements prior to issuance of this temporary certificate. Section 306(d), UBC (1976).

Because the City had no duty to ensure the operation of a fire-extinguishing system before it issued the temporary Certificate of Occupancy or until such time as it issued a final Certificate of Occupancy, the City may not be held negligent for failing to enforce the requirement of an operational fire-extinguishing system before June 17, 1980. For this reason, we hold that the failure to offer a jury instruction on negligence per se did not amount to an abuse of discretion.

Having so ruled, we need not address the various other issues raised by the City as further support for its argument that it should not be held liable for damages arising from the fire. These issues included whether the City was protected from liability by the Public Duty Doctrine, by the grandfather clause found in sections 104 and 502 of the 1976 UBC, or by general tort principles extending liability only to foreseeable actions.

## II.  ADMISSIBILITY OF EXPERT TESTIMONY

Appellants argue that the District Court erred in refusing to allow John Todd, the assistant fire chief for the City of Helena fire department at the time of the Spectrum

fire, and Lewis Thorne, City Building Inspector at the time of the fire, to offer their expert opinions at trial. The court prevented both from giving an expert opinion because they were disclosed only as lay witnesses and not as experts prior to trial. Appellants argue that the City knew the field of expertise of each, and thus it would not have been surprised by the testimony of either. Appellants contend that the exclusion of their expert opinions amounted to a hyper-technical ruling contrary to the holding in Ostermiller v. Alvord (Mont. 1986), 720 P.2d 1198, 43 St.Rep. 1180.

At the outset, we note that the District Court has the discretion to rule on the admissibility of evidence, and we will not reverse the court unless the ruling amounts to an abuse of discretion. Cooper v. Rosston (Mont. 1988), 756 P.2d 1125, 1127, 45 St.Rep. 978, 981; Rule 104, M.R.Evid. We hold that the District Court did not abuse its discretion when it excluded the expert opinions of Todd and Thorne.

Rule 26(e)(1) and (2), M.R.Civ.P. requires parties to list all experts they expect to call at trial.

> (1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to . . . (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

> (2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which . . . (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

This rule serves to minimize the element of unfair surprise, thereby encouraging a trial on the merits. Consequently, when no surprise arises from a violation of this rule, this Court has viewed the violation as hyper-technical and allowed the previously undisclosed lay or expert witness to testify. See, Ostermiller, 720 P.2d at 1201; Barrett v. Asarco, Inc. (Mont. 1988), ____ P.2d ____, 45 St.Rep. 1865. For example, in Ostermiller, the Court allowed the defense to elicit expert testimony from a physician even though the physician was listed in interrogatory answers only as a lay witness, and not as an expert. The Court concluded that no surprise would result from admission of this testimony for the following reasons: The pretrial order and interrogatory answers had listed the physician as a witness; both parties had deposed him prior to trial; and plaintiff had failed to even allege any surprise. Id. at 1201.

The facts in Ostermiller are significantly different from those in the present case. In response to a continuing interrogatory request for the names of all expert witnesses that Massman would call at trial, Massman stated that they had "no proposed expert witness identified." Appellants did list Todd and Thorne as lay witnesses, but they failed to amend this earlier interrogatory response to list the two as expert witnesses. Moreover, neither party had deposed either proposed expert. Consequently, the City objected when appellants then attempted to elicit an opinion from Todd as to the ultimate effect of the firefighting methods employed by the City upon the containment of the Spectrum Building fire. The City has claimed complete surprise. Given the facts in this case, we hold the District Court did not abuse its discretion when it excluded the proposed expert testimony of Todd.

Appellants also contend the opinion testimony asked of Todd was properly admissible as a lay witness opinion. Rule 701, M.R.Evid., allows for the admission of a lay witness opinion that is:

> (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Todd's proposed testimony as to the ultimate effect of the firefighting methods on the containment of the Spectrum fire was not based on such personal perceptions. Rather, his opinion, about the most effective methods for combating such a fire, was based on that specialized, technical knowledge obtained from his fire training and work as an assistant fire chief. As such, the substance of his opinion constituted an expert opinion rather then a lay witness opinion. An expert opinion generally is one "not within the range of ordinary training or intelligence." See generally, Kelley v. John R. Daily Co., (1919), 56 Mont. 63, 79, 181 P. 326, 331 (construing Section 7887(9) of the 1907 Revised Codes of Montana, which was the forerunner of the present statutory rule on expert testimony, Rule 702, M.R.Evid.). The District Court thus committed no error when it precluded admission of this expert opinion testimony and advised appellants to limit their questions to those requiring an answer based on personal perceptions.

Appellants did not seek an expert opinion from Thorne during trial because of an alleged ruling by the District Court in advance of trial that any such testimony would not be admissible. No record, however, exists of this ruling. This Court will only take notice of those court rulings attested to by the record or agreed upon by both parties. We will not assume the truth of a contested statement about an

10

allegedly unrecorded prior court order; such a statement would constitute hearsay. See Rule 801(c), M.R.Evid. Procedures exist under Rule 9(d) or (e), M.R.App.P. whereby a party may bring such evidence, which is not a part of the record, to the attention of this Court. Appellants failed to follow this procedure, and we will not now consider the issue of whether the District Court erred in precluding Thorne from testifying as an expert at trial, an issue predicated upon our consideration of an unrecorded ruling and objection.

## III. ADMISSIBILITY OF REBUTTAL TESTIMONY

Appellants contend that the District Court erred in refusing to allow a retired Billings firefighter, Melvin LaMotte, to give his expert opinion during rebuttal as to the alleged negligent firefighting by the City on the Spectrum fire. The court precluded the admission of such testimony because appellants failed to disclose LaMotte as an expert witness prior to trial.

The law does not require the advance disclosure of rebuttal witnesses. Wilson v. Swanson (1976), 169 Mont. 328, 546 P.2d 990. Such previously undisclosed rebuttal witnesses, however, may offer testimony only about "that which tends to counteract new matter offered by the adverse party." Gustafson v. N. Pac. Ry. Co. (1960), 137 Mont. 154, 164, 351 P.2d 212, 217. A determination of whether proposed testimony is admissible as rebuttal testimony in any given case is within the sound discretion of the District Court, and we will not reverse the District Court's ruling unless it abused this discretion. Spurgeon v. Imperial Elevator Co. (1935), 99 Mont. 432, 438, 43 P.2d 891, 893.

We hold that the District Court did not abuse its discretion when it excluded the rebuttal testimony of

11

LaMotte. LaMotte's proposed testimony related to the issue of whether the City negligently fought the Spectrum fire. This issue was not a new matter raised by the defense; it was one of the main issues raised by appellants in their complaint. Appellants had the burden of proving the allegations in their complaint during their case-in-chief. Appellants attempted, but failed, to meet this burden through the expert testimony of Todd. (The District Court properly excluded Todd's proposed expert testimony because of appellants' failure to disclose him as an expert witness prior to trial.) Having failed to meet this burden during their case-in-chief, appellants could not then assert that the City's alleged negligent firefighting was a "new matter" first raised by the defense and thereafter introduce expert testimony on this issue upon rebuttal. The District Court properly prevented any unfair surprise by excluding the expert testimony of LaMotte.

## IV. INTERJECTION OF INSURANCE AT TRIAL.

Appellants contend they were prejudiced by the City's alleged mention of insurance on five different occasions during trial. They argue this improper mention of insurance constituted reversible error warranting a new trial.

The interjection of liability insurance coverage or noncoverage generally is prohibited at law. Rule 411, M.R.Evid., states:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency,

12

> ownership, or control, or bias or prejudice of a witness.

The District Court is charged with determining if any given mention of liability insurance is sufficiently prejudicial to warrant a new trial. Doheny v. Coverdale (1937), 104 Mont. 534, 555, 68 P.2d 142, 148. This determination depends upon the circumstances and manner in which the subject of insurance is brought into the case. See, e.g., D'Hooge v. McCann (1968), 151 Mont. 353, 360, 443 P.2d 747, 751. We will not disturb a District Court's determination unless the court abused its discretion in so ruling.

In the present case, we hold that the evidence failed to show that the District Court abused its discretion when it denied appellants' post-trial motion for a new trial because of the alleged interjection of insurance into the case. The first claim of an improper mention of insurance occurred during the cross-examination of Todd. The City questioned whether Todd was told:

> . . . that there was a conflict of interest in your being someone performing inspections for the city, and going out and soliciting insurance for people that you were looking at their homes or buildings . . .

This question was asked to demonstrate Todd's general lack of judgment and thereby, to undermine his credibility as a witness. As such, it falls within the exception to the Rule prohibiting the introduction of evidence of liability insurance. See Rule 411, M.R.Evid. Further, the question only highlights the conflict of interest arising when one sells insurance and then inspects some of those same insured buildings; it does not specify that the Spectrum Building was

13

one of those insured buildings.  This general question would be insufficient to prejudice the appellants.

Appellants' second claim is that respondent improperly raised the issue of insurance while cross-examining the owner of the Horsky Block Building.  The City asked the following question:

> Q.  And on the real estate, you have stipulated your uncompensated loss was $60,000?

Appellant immediately approached the bench and objected before the owner of the Horsky Block Building could answer this question indirectly relating to insurance coverage. This question did not directly ask whether the owner was covered by insurance, and no evidence was introduced to indicate that any jury member understood from it that Massman had liability insurance.  Questioning proceeded without any other allusion to insurance.  Within the total framework of the trial, we hold that the District Court also did not abuse its discretion by holding that this single question alluding to insurance was insufficient to warrant a new trial.

Appellants' third claim of the improper mention of insurance is totally without merit.  We will not discuss it, except to state that appellant objected before any portion of John Carroll's deposition naming the insurance company involved in the Spectrum fire could be read to the jury.

Appellants' fourth claim is that several jury members saw the cover page of Todd's final investigative report which listed all the City's insurance and which was placed on respondent's counsel table within view of the jury after it was excluded from introduction into evidence.  No evidence exists that any jury member in fact saw this cover sheet

14

prior to it being removed from respondent's counsel table by counsel for appellants.

Finally, appellants claim that the City mentioned insurance during closing argument. No record exists of the closing argument in this case. For the reasons previously stated in section II above, we will not consider this fifth claim which is based upon a nonexistent record. Finding no abuse of discretion, we affirm the District Court's denial of a new trial.

The jury verdict and judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
The Honorable Joel G. Roth,
Judge of the District Court,
sitting for Mr. Justice
John Conway Harrison

15