No. 00-206

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 304

302 Mont. 391

15 P.3d 864

CHRISTOPHER K. DISLER,

Plaintiff and Respondent,

vs.

FORD MOTOR CREDIT COMPANY,

Defendant and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Madison,

The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kyle Larsen, Great Falls, Montana

For Respondent:

Loren Tucker, Virginia City, Montana

Submitted on Briefs: July 20, 2000
Decided: December 5, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 This is an appeal by Ford Motor Credit Company (Ford) from the District Court's March 22, 2000 Findings and Order granting summary judgment to Christopher K. Disler (Christopher) in his quiet title action. We affirm the court's grant of summary judgment and remand for further proceedings consistent with this opinion as to sanctions under Rule 32, M.R.App.P.

## Procedural and Factual Background

¶2 Christopher filed his complaint on October 20, 1999, to quiet title to land in Madison County, Montana, legally described as:

> A tract of land situated in the NW¼ of Section 14, Township 9 South, Range 3 West, P.M.M., more particularly shown and described as Tract A on Certificate of Survey filed in Book 7 of Surveys, page 453, records of Madison County, Montana.

Ford answered, claiming a judgment lien on the property. In due course, Christopher moved for summary judgment and filed a supporting affidavit, brief, and Ford's answers to Christopher's requests for admission and interrogatories. Ford opposed summary judgment and supported its objection with a brief. Attached to Ford's brief, but without the benefit of any supporting affidavit, were various documents apparently generated in connection with Wilma Hudson's (Hudson) financing of an automobile purchase through Ford in the summer of 1990 and in connection with Ford's attempt to collect Hudson's default on the resulting loan. The District Court heard oral argument on Christopher's motion and, as noted, subsequently granted summary judgment. Ford timely appealed.

¶3 The summary judgment record reveals the following undisputed--and dispositive-- material facts. Hudson entered into a contract for deed covering the subject real property with Christopher's predecessor in interest, Kevin R. Disler, in July 1981. This transaction was escrowed at the Ruby Valley National Bank. The contract for deed was paid off in May 1988, and on June 8, 1988, the escrow agent sent to "Kevin R. Disler" at his address in Hunertown, Indiana, the title insurance, warranty deed and certificate of survey.

Christopher signed for these documents on June 13, 1988. The Hudson to Kevin Disler deed, dated and signed July 22, 1981, was recorded on April 14, 1997, in Book 407, page 449, records of Madison County. A deed of distribution from the Kevin Disler estate to Christopher was recorded later in Book 427, page 992. On May 3, 1994, Ford obtained a default judgment against Hudson as a result of her failure to pay her automobile loan.

¶4 On this record, we consider two issues:

¶5 1. Did the District Court err in granting summary judgment to Christopher?

¶6 2. Is Christopher entitled to sanctions against Ford for a frivolous appeal?

## Discussion

### Issue 1--Summary Judgment

¶7 "Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Ash Grove Cement Co. v. Jefferson County* (1997), 283 Mont. 486, 491, 943 P.2d 85, 88; Rule 56(c), M.R.Civ.P. We review a district court's grant of summary judgment *de novo*, applying the same Rule 56(c), M.R.Civ.P. criteria as the district court. *Ash Grove Cement Co.*, 283 Mont. at 491, 943 P.2d at 88 (citation omitted).

¶8 Ford contends that there exist material issues of fact concerning proper delivery of the Hudson to Kevin Disler deed and the nature of Kevin Disler's possession of the subject property. Ford questions why the deed was not recorded until 1997, and it raises various equitable concerns with respect to Hudson's statements on her 1990 loan application and which she made, subsequently, to Ford's collector--statements which Ford claims led it to believe that Hudson owned the property. Ford maintains that it was Christopher's obligation on summary judgment to offer evidence addressing and resolving the various questions and concerns. We disagree.

¶9 While all reasonable inferences are to be drawn from the offered evidence in favor of the party opposing summary judgment, where the record--here, the record made on summary judgment by Christopher--discloses no genuine issue of material fact, the burden then shifts to the party opposing summary judgment to present substantial evidence of a genuine issue of material fact. This burden is not met by merely making conclusory or

speculative statements or by raising unsubstantiated concerns and theories in a brief. *See Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17, 988 P.2d 1221, ¶ 17.

¶10 If Ford believed that any of the matters which it argued to the trial court and now argues on appeal would defeat summary judgment, then it was Ford's burden to place the appropriate supporting affidavits or fruits of discovery into the summary judgment record. This it failed to do. As we observed in *Thornton v. Songstad* (1994), 263 Mont. 390, 397, 868 P.2d 633, 637:

> proving [Thornton's] theory would benefit his case and defeat the defendants' motion for summary judgment; and, accordingly, [Thornton] had the affirmative duty to bring before the court substantial evidence and specific material facts supporting his theory by filing affidavits or through sworn deposition testimony or interrogatory answers in the record.

¶11 Moreover, as noted, the three loan documents were simply attached to Ford's summary judgment brief without any supporting testimonial affidavit or sworn discovery response from any person at Ford as contemplated by Rules 56(c) and (e), M.R.Civ.P. Basically, without an affidavit or sworn discovery response of a Ford employee with personal knowledge of the genuineness, relevance and contents of the documents, the attachments to Ford's brief were little more than inadmissible hearsay. *See Eberl v. Scofield* (1990), 244 Mont. 515, 519, 798 P.2d 536, 538; *Thornton,* 263 Mont. at 398, 868 P.2d at 638 (affidavits containing inadmissible hearsay may not be considered as meeting the party's burden on summary judgment).

¶12 That said, we do note that Ford stated to the trial court at the summary judgment hearing that it needed to conduct some discovery. However, we also note an absence in the record of any Rule 56(f), M.R.Civ.P.[(1)]affidavit or any apparent attempt by Ford to conduct discovery between the time it filed its answer on December 3, 1999, and the time Christopher filed for summary judgment over two and one-half months later--a time frame during which Christopher apparently sent to Ford and received back answers to his own interrogatories and requests for admission.

¶13 Here, the facts referred to in ¶ 3 above are the only facts actually established in the pleadings, answers to interrogatories, and admissions on file in this case and in the public record (of which the trial court was asked to take judicial notice). Accordingly, it is on these facts that we base our decision. *See Erker,* ¶ 17.

¶14 We must next determine whether Christopher was also entitled to judgment as a matter of law on these facts. Rule 56(c), M.R.Civ.P. We agree with the District Court that he was. Our decision in *Hannah v. Martinson* (1988), 232 Mont. 469, 758 P.2d 276, is dispositive.

¶15 *Hannah* is more complicated factually than the case at bar but the principle of law is the same. Hannah transacted a land sale to Pride under a contract for deed. Pride resold the property under another contract to Martinson. Pride defaulted but Hannah honored his contract with Martinson who continued to pay Hannah. Martinson then delivered a quit claim deed and a warranty deed, both executed January 15, 1981, to Nichols. The quit claim deed was recorded October 22, 1982; the warranty deed was recorded June 14, 1983. Nichols continued to make payments to Hannah until he defaulted on April 13, 1983. Hannah then repossessed the property and sued to quiet title. *Hannah,* 232 Mont. at 470, 758 P.2d at 277.

¶16 The only defendant to dispute Hannah's title was Klatt. Klatt had obtained a judgment against Martinson on September 24, 1981, after Martinson had delivered his two deeds to Nichols, but before the deeds were recorded. The District Court determined that Klatt's judgment lien did not attach to the real property. *Hannah,* 232 Mont. at 471, 758 P.2d at 277-78. We affirmed in an opinion wherein we thoroughly discussed the issue of whether a judgment lien attaches to real property which has been transferred to another party by means of an unrecorded deed prior to the docketing of the judgment. *Hannah*, 232 Mont. at 470, 758 P.2d at 277.

¶17 We stated the principle of law upon which we relied to resolve this issue in the following language:

> A judgment lien can only attach to the <u>actual</u> interest of the judgment debtor. It can not attach to an interest which does not exist, nor can a judgment lien claim superiority as against a valid prior transfer.
>
> A judgment lien can only bind an interest in real property when the debtor himself, during the existence of the judgment lien, could voluntarily transfer or alienate the interest.

*Hannah, 232 Mont. at 472, 758 P.2d at 278-79 (internal citations omitted).*

¶18 In the case *sub judice*, some thirteen years prior to Ford obtaining its judgment against her, Hudson entered into a contract for deed with Kevin Disler to sell the subject real property. Some six years before entry of Ford's judgment, Hudson actually conveyed the subject property to Kevin Disler by warranty deed when the contract was paid off. Plainly, at the time Ford's judgment was entered on May 3, 1994, Hudson owned neither an equitable interest nor a legal interest in the subject property. In fact, she had no interest at all.

¶19 Under the rule set out in *Hannah*, as of May 3, 1994, Hudson had no <u>actual</u> interest in the real property at issue; Ford's judgment lien could not attach to an interest of Hudson which did not exist; nor could Ford's judgment lien claim superiority against Hudson's valid prior transfer to Kevin Disler. Ford's judgment lien could only bind an interest of Hudson in the subject real property if, on or after May 3, 1994, she, herself, could have voluntarily transferred or alienated her interest. Obviously, having already sold and conveyed away all of her equitable and legal title and interest in and to the subject property years before Ford obtained its judgment against her, Hudson could not have voluntarily transferred or alienated her interest in the property on or after May 3, 1994. *Hannah,* 232 Mont. at 472, 758 P.2d at 278-79.

¶20 The fact that the Hudson to Kevin Disler deed was not recorded until April 1997, does not change this result. "An unrecorded instrument is valid as between the parties and those who have notice thereof." Section 70-21-102, MCA. *See also Blakely v. Kelstrup* (1985), 218 Mont. 304, 306, 708 P.2d 253, 254 (record title and legal title are not synonymous; a property owner can have a valid legal title without recordation; recordation is a device to establish priority but has nothing to do with conveying title; its purpose is to give notice to subsequent purchasers and encumbrancers).

¶21 In summary, on the actual undisputed facts established in the record, Christopher was entitled to judgment as a matter of law. The District Court's order granting summary judgment is, therefore, affirmed.

## Issue 2--Sanctions

¶22 On appeal Christopher argues that Ford's appeal was without substantial or reasonable grounds. He maintains that *Hannah* was clearly on point and dispositive under the facts he proved. Accordingly, Christopher requests that we award sanctions under Rule 32, M.R. App.P. This rule provides:

If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

¶23 "This Court does not readily impose sanctions upon parties for filing frivolous appeals." *Federated Mut. Ins. Co. v. Anderson* (1996), 277 Mont. 134, 142, 920 P.2d 97, 102. However, we have imposed sanctions where the appellant has taken conflicting and inconsistent positions, where it has miscited or misrepresented authority and where arguments and positions taken are not supported by substantial and reasonable grounds. *See Federated*, 277 Mont. at 142-46, 920 P.2d at 102-104.

¶24 Christopher contends that Ford took inconsistent positions in the trial court in its response to his motion for summary judgment, first asserting that it had no knowledge that Hudson had conveyed her property and then asserting that Hudson had not conveyed her property. Christopher also claims that Ford inaccurately cited *Kirgan v. Kirgan* (1949), 123 Mont. 34, 207 P.2d 557, in its summary judgment brief. Finally, Christopher maintains that, by reason of our decision in *Hannah* and its clear applicability to the case at bar, Ford's appeal was without any substantial or reasonable grounds. Ford does not respond to these arguments because it failed to file a reply brief on appeal.

¶25 As already noted, in his summary judgment submissions, Christopher established the factual predicate for the applicability of *Hannah*. Moreover, he argued that case to the trial court in his brief, and, while the court did not file a rationale with its order granting summary judgment, presumably, the trial judge relied on *Hannah* for its ruling. Ford's response to Christopher's summary judgment motion was largely to raise unsubstantiated equitable concerns about Hudson applying for and receiving a loan from Ford, while implying, in Ford's view, that she owned the subject property, even though it had been previously sold and conveyed to Kevin Disler. Ford also raised questions about Christopher's failure to immediately record the Hudson to Kevin Disler deed and as to his claim of possession to the property. Ford also argued that *Hannah* was factually distinguishable and cited *Kirgan* for the proposition that a person in dealing with another person in respect to real property may rely on the record title in the absence of knowledge of the actual title. Again, as noted, Ford argued, without supporting affidavits or sworn discovery, that it relied on the record title to the real property in making its loan to Hudson and that with discovery it could prove up its theories of fraud and unclean hands.

¶26 The problem is, as we have already observed, that short of counsel's statements, theories, and questions raised in Ford's brief and three loan documents attached to the brief, Ford submitted nothing to meet its burden to demonstrate an issue of material fact. Moreover, and notwithstanding Ford's attempts to distinguish *Hannah*, the case was and is clearly on point. Finally, Ford's appeal tracks its approach in the trial court.

¶27 While Ford's conduct was and is not as egregious as was John Deere's in *Federated*, nevertheless, having thoroughly reviewed the summary judgment record and having carefully considered the briefs on appeal, we are hard-pressed to find any real merit in Ford's defense of Christopher's summary judgment motion or in its case on appeal. We conclude that on the record and briefing before us, Ford's appeal was taken "without substantial or reasonable grounds" and, therefore, under Rule 32, M.R.App.P., Christopher is entitled to his costs and attorney's fees in prosecuting this appeal.

¶28 We affirm the trial court's grant of summary judgment to Christopher. We remand, however, for further proceedings to determine and to award judgment to Christopher for his costs and reasonable attorney's fees on appeal.

¶29 Affirmed and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

1. Rule 56(f), M.R.Civ.P., provides:

Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or

discovery to be had or may make such other order as is just.