
DA 11-0597

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 159

CHARLES EUGENE ALBERT,

    Plaintiff and Appellant,

v.

CITY OF BILLINGS,

    Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DV 10-689
                Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Elizabeth J. Honaker, Honaker Law Firm, Billings, Montana

        For Appellee:

            Gerry Fagan, Moulton Bellingham PC, Billings, Montana

                            Submitted on Briefs:  May 23, 2012

                                     Decided:  July 24, 2012

Filed:

        _____
                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     In July 2009, Charles Albert's Billings, Montana home caught fire. Despite response by the City of Billings Fire Department, the house burned to the ground. Subsequently, Albert sued the City for negligence of the Billings Fire Department, discrimination based upon age and disability, slander, and violation of his constitutional and statutory right to know and obtain documents held by the City. The District Court for the Thirteenth Judicial District granted the City's motion for summary judgment on all issues. Albert appealed. We affirm.

## ISSUES

¶2     A restatement of the issues presented by Albert is:

¶3     Did the District Court err by granting the City of Billings' motion for summary judgment on Albert's claim of slander?

¶4     Did the District Court err by granting the City of Billings' motion for summary judgment on Albert's claim of negligence by the City firefighters?

¶5     Did the District Court err by granting the City of Billings' motion for summary judgment on Albert's claim of discrimination?

¶6     Did the District Court err by granting the City of Billings' motion for summary judgment on Albert's claim that he was denied his constitutional and statutory right to know?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7     Albert is a 77-year-old man with a self-acknowledged history of mental illness. Beginning in 1996, the City of Billings charged Albert with numerous violations of the

Billings Montana City Code (Code) pertaining to the status and condition of his property. The charges included dumping raw human waste into the dumpster behind his home and feeding raw meat to numerous feral animals on his property. Between 2006 and spring 2009, Albert obtained at least two copies of his record of Code violations from the City.

¶8 When the fire broke out in July 2009, the Billings Fire Department responded. Albert had suffered burns to his head and hands and was transported to the hospital. The house was, and had been for many years, in very poor condition. The firefighters initially entered the home but subsequently were instructed to fight the fire from outside because the roof was sagging and unstable and the inside of the structure was extraordinarily cluttered with materials fueling the fire, making it an even more dangerous house fire than firefighters regularly encounter. The battalion commander, Brian McDermott, described why he prohibited his firefighters from fighting the blaze from within: "The structure integrity hindered our firefighting all the way along. At [one] stage, we'd been there for hours with all the engine companies and still made no progress in getting to the heart of the fire because of the amount of clutter . . . ." The firefighter explained that finding the "heart" of the fire would allow them to more strategically attack the flames and gain control.

¶9 Firefighters remained at the scene all night trying to pinpoint the heart of the fire. Eventually, they determined they must wait for the fire to break through the roof to employ a different firefighting strategy. However, when early the next morning the flames finally broke through the roof, the fire, being fueled by substantial debris and clutter in the attic, was too ferocious to control, and the house was completely consumed.

3

¶10   Believing that the firefighters chose to let his home burn because the City considered it a "blight," Albert requested another copy of his Code enforcement record because his earlier copy was destroyed in the fire. He asserts that he submitted a letter requesting his file on August 28, 2009, but claims that the material he received was "censored" or incomplete because the copy charges for the file were less than they had been previously. He also believed he recalled a document that was not included in the newly-obtained record. The City denied censoring the file and explained that the cost of copying the file was less than Albert's previous acquisition because the City copied the file on both sides of the paper rather than on a single side as it had done earlier.

¶11   On February 17, 2010, Albert, with counsel, again requested his Code enforcement records. They were told that his file had been transferred to the City Attorney. Albert claims the City Attorney did not return his calls. On April 16, 2010, Albert filed a pro se complaint in this action, and on June 14, he filed an amended complaint. He alleged that the City (1) violated his constitutional and statutory right to know by taking approximately four months to provide him with the requested Code enforcement records; (2) was negligent in not properly fighting the fire on his property; (3) violated the Montana Human Rights Act by discriminating against him on the basis of age and disability; and (4) slandered him to the public.[1] In June 2010, the City provided Albert's Code enforcement records via a document production. Again, the document

---

[1] At different times in this proceeding, Albert claimed that the firefighters made statements to "the public" that Albert was dangerous, that he may have started the fire, that he had no working bathroom in his home, and that he wore a mask and goggles while sleeping as protection against cockroaches in his home. The only allegedly slanderous statement raised on appeal is the last statement.

Albert believed would support his claim that the City was trying to get rid of his house was not in the record.

¶12 On January 18, 2011, the City moved for summary judgment on all claims. The District Court granted the motion. The court concluded that Albert's Human Rights Act and discrimination claims were "a repackaging of [his] negligent firefighting and public records request claim." The court determined that Albert failed to make a prima facie case defeating summary judgment because he failed to present any facts that he "was treated *differently* than anyone else who was a member of his protected class." Addressing Albert's negligence claim, the District Court held that the public duty doctrine precluded Albert's negligence claim because the City firefighters owe a legal duty to fight fires to the public at large, not to Albert individually. The court further decided that Albert's negligence claim required an expert witness who could address firefighting tactics and strategy. Because Albert had not provided such an expert, his negligence claim failed.

¶13 The District Court dismissed Albert's slander claim on the grounds that there was a general lack of evidence to support the claim. Additionally, the court found that because the City's statements were made in the proper discharge of an official duty or within the scope of the official's authority, such statements could not constitute slander. Lastly, the court ruled that Albert's public records/right to know claim was moot because Albert ultimately obtained the records he wanted.

¶14 Albert appeals.

## STANDARD OF REVIEW

¶15 We review the grant of summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the district court. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Styren Farms, Inc. v. Roos*, 2011 MT 299, ¶ 10, 363 Mont. 41, 265 P.3d 1230.

## DISCUSSION

¶16 *Did the District Court err by granting the City of Billings' motion for summary judgment on Albert's claim of slander?*

¶17 On July 30, 2009, the Billings Gazette published an article reporting the fire and destruction of Albert's home. The article stated that Albert's home had no toilet and that Albert "reportedly" slept with goggles and a mask as protection against cockroaches. This statement was not attributed by the Gazette to any of the fire or police officials. The City's answers to interrogatories indicated that one of the officials may have made the statement, but there was no specific recollection. Albert argues that the statement subjected "him to ridicule" and the District Court should have ruled "as a matter of law, that the City's statement would tend to disgrace and degrade Albert or cause him to be shunned and avoided."

¶18 Section 27-1-803, MCA, defines "slander" as "a false and unprivileged publication other than libel that: (1) charges any person with crime or having been indicted, convicted, or punished for crime; or (2) imputes in a person the present existence of an infectious, contagious, or loathsome disease; (3) tends directly to injure a person in respect to the person's office, profession, trade, or business . . .; (4) imputes to a person

6

impotence or want of chastity; or (5) by natural consequence causes actual damage." Applying this definition to Albert's claim that firefighters told people that he slept with a mask and goggles, the statement does not meet any of the statutory categories of actionable slander. Moreover, as we noted in *Wainman v. Bowler*, 176 Mont. 91, 96, 576 P.2d 268, 271 (1978), "[i]t is not sufficient, standing alone, that the language is unpleasant and annoys or irks him, and subjects him to jests or banter, so as to affect his feelings." We therefore affirm the District Court's grant of summary judgment to the City on this issue.

¶19 *Did the District Court err by granting the City of Billings' motion for summary judgment on Albert's claim of negligence by the City firefighters?*

¶20 The District Court granted summary judgment on this issue on two independent grounds: (1) Albert did not produce the necessary evidence to support his negligence claim, and (2) the Public Duty Doctrine (PDD) precluded a claim of negligence against the City's firefighters.

¶21 On appeal, Albert maintains that the City's firefighters negligently fought the fire that ultimately consumed his home; therefore, he is entitled to damages. He challenges several of the City's firefighting decisions, such as when the firefighters applied water to his home and how they used a fan to exhaust the smoke. The City counters that Albert's claim fails for want of an expert witness to address firefighting tactics. The firefighters who testified before the District Court explained that various tactics are employed in attacking a fire depending on the type of fire, the source of the fire, the condition of the burning structure, and the material fueling the fire. The District Court determined that

7

whether or not the firefighters should have dumped water on Albert's house, gone inside Albert's house, or how they should have fought the fire in general, cannot be resolved without expert testimony. Firefighting techniques are beyond the common experience of the trier of fact. Expert testimony will assist the trier of fact in determining liability for negligent firefighting.

¶22 It is well-established that expert testimony is required to support a negligence claim "when the issue presented is sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact in determining the issue or understanding the evidence." *Dayberry v. City of E. Helena*, 2003 MT 321, ¶ 17, 318 Mont. 301, 80 P.3d 1218.

¶23 In *Massman v. City of Helena*, 237 Mont. 234, 773 P.2d 1206 (1989), we addressed whether firefighting techniques or methods are sufficiently beyond the common experience of the trier of fact. In *Massman*, though we were analyzing a distinguishable issue, the Court observed that a

> [firefighter's] proposed testimony as to the ultimate effect of the firefighting methods on the containment of the . . . fire was not based on . . . personal perceptions. Rather, his opinion, about the most effective methods for combating such a fire, was based on that specialized, technical knowledge obtained from his fire training and work as an assistant fire chief. . . . An expert opinion generally is one "not within the range of ordinary training or intelligence." (Citation omitted.)

*Massman*, 237 Mont. at 242, 773 P.2d at 1211. *See also Dubiel v. Mont. DOT*, 2012 MT 35, ¶¶ 16-18, 364 Mont. 175, 272 P.3d 66.

¶24 The District Court did not err in granting summary judgment to the City on the grounds that Albert failed to present expert witness testimony to substantiate his

negligent firefighting claim. As this failure is fatal to Albert's negligence claim, we need not address his PDD claim.

¶25 *Did the District Court err by granting the City of Billings' motion for summary judgment on Albert's claim of discrimination?*

¶26 On appeal, Albert alleges that City officials discriminated against him by censoring his Code enforcement violation records and by refusing to provide them to him in a timely manner. He alleges the discrimination was based upon his age and his history of mental illness.

¶27 As noted by the District Court, "Montana law allows a discrimination claim to go forward if the State or one of its political subdivisions refuses to provide, withholds, or denies services, goods, or funds to individuals." Section 49-2-308(1)(a), MCA. To establish a discrimination claim, Albert was required to present a prima facie case of disparate treatment. This required that he establish that he is a "member of a protected class" and that he was "treated differently because of membership in [the] protected class." Admin. R. M. 24.9.610(2)(a)(i) and (iii).

¶28 Admin. R. M. 24.9.610(2)(b) sets forth examples of evidence that Albert could have presented to establish that he was treated differently because of his membership in a protected class. This includes: (1) evidence that the City provided public documents to persons who were not members of the same protected class; (2) proof that similarly situated persons outside the protected class were treated more favorably; (3) proof the City intended to discriminate against persons in Albert's protected class; and (4) proof that there is a causal connection between the City's action and Albert's protected class.

As noted by the District Court, Albert alleged disparate treatment but presented no evidence to support the allegation that he was treated differently than anyone else in his class who requested documents from the City. Because Albert failed to satisfy the elements of a discrimination claim, the District Court did not err in granting summary judgment to the City on this issue.

¶29 *Did the District Court err by granting the City of Billings' motion for summary judgment on Albert's claim that he was denied his constitutional and statutory right to know?*

¶30 Finally, Albert argued to the District Court that the City violated his constitutional and statutory "right to know"—the right to inspect and take a copy of any public writing in the possession of the State of Montana. However, because Albert ultimately received the documents he requested, the District Court granted summary judgment to the City on the grounds of mootness. On appeal, Albert argues that a delay of over four months and the requirement that he file suit before the City provided the requested documents does not constitute compliance with §§ 2-6-102, 7-1-4144, MCA, and Article II, Section 9 of the Montana Constitution, and that delayed production of documents does not moot the issue.

¶31 Albert asserts that after the fire he made numerous attempts by mail, in person, and through e-mail to obtain his Code enforcement record. He acknowledges that he received documents from the City in response to his August 28 letter but claims they were censored or incomplete. The City contends it gave him everything the file contained in response to his letter. Albert further alleges that beginning in February 2010 the City disregarded or ignored his repeated requests for the file until he filed suit in June

10

2010, at which time the City provided the documents pursuant to a discovery motion. Unfortunately, there is no evidence in the record identifying what documents Albert actually received after his August 2009 request or what documents he received in June 2010.

¶32 Further, the District Court record contains no admissible evidence of Albert's alleged numerous requests by mail or e-mail. Attached as Exhibit B to Albert's response in opposition to the City's motion for summary judgment is an incomplete e-mail stating that Albert and his counsel arrived at the City Planning Division Desk of the public library on February 17, 2010, and asked for copies of Albert's Code enforcement file. While this e-mail appears to support Albert's contention that he made a request on February 17, 2010, the e-mail is not an authenticated document and cannot be used to defeat summary judgment. *PPL Mont., LLC v. State*, 2010 MT 64, ¶ 92, 355 Mont. 402, 229 P.3d 421, *rev'd in part on other grounds, PPL Mont., LLC v. Montana*, ___ U.S. ___, 132 S. Ct. 1215 (2012) ("While unauthenticated documents should not be considered on summary judgment, a document can be considered if it is 'authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant [is] a person through whom the exhibits could be admitted into evidence.' ").

¶33 It is the duty of the appellant to present this Court with a record sufficient to enable it to rule upon the issues raised. M. R. App. P. 8(2). While the record provided to us contains partial excerpts from Albert's deposition and his responses to discovery requests, it does not contain any sworn testimony, affidavits, or sworn interrogatory answers setting forth the steps Albert took in seeking production of his Code enforcement

11

record, or the response by the City to those efforts. Rather, we have only Albert's unsworn allegations of what occurred. Thus, Albert has failed to comply with M. R. Civ. P. 56(e), which states:

> **Affidavits; Further Testimony.**
> **(1) *In General.*** A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.
>
> **(2) *Opposing Party's Obligation to Respond.*** When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

¶34 In *Disler v. Ford Motor Credit Co.*, 2000 MT 304, ¶¶ 9-10, 302 Mont. 391, 15 P.3d 864, we explained the obligations of a party opposing summary judgment. We stated:

> While all reasonable inferences are to be drawn from the offered evidence in favor of the party opposing summary judgment, where the record . . . discloses no genuine issue of material fact, the burden then shifts to the party opposing summary judgment to present substantial evidence of a genuine issue of material fact. *This burden is not met by merely making conclusory or speculative statements or by raising unsubstantiated concerns and theories in a brief.* (Emphasis added.)
> If Ford [the party opposing summary judgment] believed that any of the matters which it argued to the trial court and now argues on appeal would defeat summary judgment, then it was Ford's burden to place the appropriate supporting affidavits or fruits of discovery into the summary judgment record. This it failed to do. (Citations omitted.)

¶35 Albert had an affirmative duty to provide the District Court with "substantial evidence and specific material facts supporting his theory by filing affidavits or through sworn deposition testimony or interrogatory answers in the record." *Disler*, ¶ 10. He did not comply with this obligation. For this reason, we affirm the District Court's grant of summary judgment to the City. However, we do so on evidentiary grounds rather than on grounds of mootness. *Kitchnet v. Butte-Silver Bow County*, 2012 MT 68, ¶ 19, 364 Mont. 347, 274 P.3d 740 (affirming the District Court's grant of summary judgment to the County and the State on different grounds by acknowledging that the court "reached the correct result albeit for the wrong reason.").

## CONCLUSION

¶36 For the foregoing reasons, we affirm the District Court's rulings on summary judgment.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice James C. Nelson concurs.

¶37 I concur in the Court's Opinion. That said, and referring to Issue four, I am disturbed by Albert's contentions that the City sat on his request for documents for

13

months.  If true, that is unacceptable.  Montana's Constitution guarantees that no person shall be deprived the right to examine documents of all public bodies or agencies of state government and its subdivisions, except where the demand of individual privacy clearly exceeds the merits of public disclosure.  Mont. Const. art. II, § 9; *Billings Gazette v. City of Billings*, 2011 MT 293, ¶¶ 15-16, 362 Mont. 522, 267 P.3d 11.

¶38    A citizen who wishes to exercise this fundamental right should not have to wait months or have to file suit to obtain his requested documents.  And, in my view, there is no "mootness" defense to a suit alleging a right-to-know violation, that at some point—after a lengthy wait or after filing suit—the documents were finally delivered.  The violation of Article II, Section 9 occurs when the person is deprived of his fundamental right to examine and to observe, and that violation cannot be undone by some later curative action by the government.  *See Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 83, 333 Mont. 331, 142 P.3d 864 (Nelson & Cotter, JJ., dissenting).  Moreover, we held in *Havre Daily News* that even if the government produces the requested documents after suit is filed "in order to dodge th[e] fee shifting statute," that does not moot the ability of the requestor to seek attorney's fees.  *Havre Daily News*, ¶ 44; § 2-3-221, MCA.

¶39    Unfortunately here, Albert failed to establish his right-to-know violation on summary judgment for the technical reasons set forth in our Opinion. In my view, however, the allegations of Albert's Article II, Section 9 claim, if true, reflect a need by the county officials involved to review their right-to-know procedures and protocols. This Court has consistently looked with disfavor on violations of the fundamental right to

14

know. *See Yellowstone County v. Billings Gazette*, 2006 MT 218, 333 Mont. 390, 14 P.3d 135. As stated in *Havre Daily News*,

> [o]ur right to know is too fundamental to be entrusted to the whims of those who neither understand its constitutional birthright nor honor its power to breach the wall of secrecy that divides the government from the governed.

*Havre Daily News*, ¶ 85 (Nelson & Cotter, JJ., dissenting).

¶40 Therefore, I concur in the Court's decision.


/S/ JAMES C. NELSON


Justices Patricia O. Cotter and Beth Baker join the Concurrence of Justice James C. Nelson.


/S/ PATRICIA COTTER
/S/ BETH BAKER