FILED

March 1 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0459

DA 15-0459

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 49N

ROBERT REED and BETTY REED,

        Plaintiffs, Counter-Defendants, and Appellants,

v.

INDIGO FAITH PROPERTIES, LLC and DIRK BEYER, Individually,

        Defendants, Counter-Claimants, and Appellees.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV-14-512
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Quentin M. Rhoades, Nicole L. Siefert, Rhoades & Siefert, PLLC,
Missoula, Montana

        For Appellees:

                Kevin S. Jones, Joseph D. Houston, Christian, Samson & Jones, PLLC,
Missoula, Montana

        Submitted on Briefs:  February 3, 2016

        Decided:  March 1, 2016

Filed:

                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Indigo Faith Properties, LLC, (Indigo) owns real property in Hamilton, Montana, near the West Fork of the Bitterroot River. Dirk Beyer is Indigo's registered agent and managing member. Indigo's property borders Robert and Betty Reed's property. The West Fork of the Bitterroot River runs through a portion of the Reeds' property.

¶3 In 1995, the Reeds' predecessors in interest executed an easement (1995 Easement) in favor of Indigo's predecessors in interest. The 1995 Easement provides that it is "a non-exclusive 30' easement for roadway and utility purposes . . . ." Indigo's predecessors in interest paid $12,000 in consideration for the 1995 Easement. The 1995 Easement further provides that it "shall be binding upon and inure to the benefit of the heirs and assigns of the parties hereto."

¶4 The Reeds claim that the purpose of the 1995 Easement was to provide Indigo's predecessors in interest with access to a contemplated bridge over the river; however, the bridge was never built at the proposed location. In 2005, Indigo's predecessors in interest entered into an easement and road and bridge maintenance agreement (2005 Easement) with a different party. The 2005 Easement provided Indigo's predecessors in interest

with access to a public roadway by means of a bridge across a different portion of the river.

¶5 Indigo purchased its property in 2010 and the Reeds purchased their property in the spring of 2014. After purchasing the property, Indigo's members and guests utilized the 1995 Easement to access the river for recreational purposes by vehicle. After the Reeds purchased their property, they demanded that Indigo cease accessing the river via their property and Indigo refused. The Reeds filed suit against Indigo and Beyer alleging trespass and seeking to extinguish the 1995 Easement. Both parties filed motions for summary judgment. On July 7, 2015, the District Court issued an order denying the Reeds' motion and granting Indigo's motion. The Reeds appeal.

¶6 We review an entry of summary judgment de novo. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Albert*, ¶ 15.

¶7 On appeal, the Reeds assert that the 1995 Easement's "original purpose" was to provide access to Indigo's property by means of a bridge. They assert that the 1995 Easement no longer serves this purpose; therefore, the Reeds claim that the 1995 Easement should be extinguished under the doctrine of "changed circumstances." They further contend that the 1995 Easement is general in terms of its scope. Accordingly, the Reeds assert that the scope of the 1995 Easement should be defined by the surrounding circumstances of the easement's actual use at the time of its creation. They argue that

3

until 2005, no one actually utilized the 1995 Easement and that, since Indigo acquired the property, it has utilized the 1995 Easement only to access the river for recreational purposes. They claim that the conduct of Indigo's predecessors in interest makes clear that the 1995 Easement "is solely for the purpose of ingress and egress to and from the [Indigo property]," not for recreational access to the river.

¶8 An express easement is one that is "created by a written instrument." *Woods v. Shannon*, 2015 MT 76, ¶ 10, 378 Mont. 365, 344 P.3d 413. The 1995 Easement was created by a written instrument and is therefore an express easement. As such, the easement's scope "is determined by the terms of the grant." *Woods*, ¶ 12 (citing § 70-17-106, MCA; *Clark v. Pennock*, 2010 MT 192, ¶ 25, 357 Mont. 338, 239 P.3d 922). The terms of the 1995 Easement specifically grant "a non-exclusive 30' easement for roadway and utility purposes." We conclude that the grant in the 1995 Easement is specific in nature. *See Clark*, ¶ 27 (concluding that an easement was specific because its language "specifically creates a road easement . . ."). Therefore, contrary to the Reeds' assertions, we need not "look beyond the plain language of the grant or consider the situation of the property and the surrounding circumstances, including historical use of the easement" to determine the 1995 Easement's scope. *Woods*, ¶ 12 (citing *Clark*, ¶ 25).

¶9 The Reeds' contention that the 1995 Easement should be extinguished under the doctrine of "changed circumstances" likewise is unpersuasive. Although we have not adopted the doctrine in Montana—and we decline to do so here—we conclude that it is not applicable. The changed circumstances doctrine is described in the *Restatement*

4

*(Third) of Property: Servitudes*, § 7.10 (3d ed. 2000), which provides in relevant part that "[w]hen a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the purpose to be accomplished." Contrary to the Reeds' contentions, a change has not taken place that makes it impossible to accomplish the purpose of the 1995 Easement. The specific terms of the 1995 Easement do not reference access for ingress and egress, nor do its terms condition the easement upon a bridge being built. We will not read those terms into the 1995 Easement. *Clark*, ¶ 25 (concluding, "If an easement is specific in nature, the breadth and scope of the easement are strictly determined by the actual terms of the grant."). If the Reeds' predecessors in interest had intended to limit the 1995 Easement to access for ingress and egress, or condition the easement upon a bridge being built, they could have said as much in the granting language. *See Clark*, ¶ 27 (concluding, "If YBP wanted to limit tract owner's access to one road, it would have said as much in the deeds and covenants."). The stated purpose of the 1995 Easement is for "roadway and utility purposes." Indigo's use of the easement to access the river is consistent with this purpose. Accordingly, the circumstances have not changed.

¶10    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law. We agree with the

5

District Court that Indigo demonstrated the absence of a genuine issue of material fact.

We affirm its grant to Indigo of judgment as a matter of law.

/S/ BETH BAKER

We concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE