No.03-172

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 265

DONALD S. CAPE,

       Plaintiff and Appellant,

  v.

CROSSROADS CORRECTIONAL CENTER,
CORRECTIONS CORPORATION OF AMERICA,
WARDEN JIM MACDONALD, ASSISTANT WARDEN
WILLIAM BOOTHE, BEST FOODS INC., AND TIM HAWK,

       Defendants and Respondents.

APPEAL FROM:    District Court of the Ninth Judicial District,
                   In and for the County of Toole, Cause No. DV 2000-030
                   The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

            Donald S. Cape, *pro se*, Great Falls, Montana

       For Respondents:

            J. Daniel Hoven, Sara B. Stanton, Browning, Kaleczyc, Berry & Hoven,
            P.C., Helena, Montana

Submitted on Briefs:  July 10, 2003

Decided:  September 21, 2004

Filed:

_____
                         Clerk
Justice James C. Nelson delivered the Opinion of the Court.

¶1 Donald Cape appeals an order of the District Court for the Ninth Judicial District, Toole County, dismissing his claim that Respondents violated his right to freedom of religion when Respondents failed to provide him with "religious meals," as well as an order granting Respondents' motion for summary judgment on Cape's other claims that Respondents had interfered with Cape's ability to practice his religion while he was incarcerated at Crossroads Correctional Center (CCC). We affirm.

¶2 We address the following issues on appeal:

¶3 1. Whether the District Court erred in dismissing Cape's claims that Respondents violated Cape's right to freedom of religion by denying him "religious meals."

¶4 2. Whether the District Court erred in granting Respondents' motion for summary judgment thereby dismissing Cape's other freedom of religion, equal protection, conspiracy and 42 U.S.C. § 1983 claims.

## Factual and Procedural Background

¶5 Cape had been incarcerated at CCC, which is owned and operated by Corrections Corporation of America. Best Foods, Inc., and Tim Hawke are food service providers for CCC. During the pendency of the underlying action, Cape was transferred to the Great Falls Regional Jail for reasons unrelated to his lawsuit.

¶6 In his Amended Complaint, filed February 5, 2001, Cape alleged that Respondents violated his First Amendment right to freedom of religion by failing to provide him with "religious meals" during Lent and denied him the ability to observe Lent by eating fish and

2

unleavened bread on Ash Wednesday and Fridays during Lent. Cape further alleged that

Respondents, except Best Foods and Hawke, violated his right to freedom of religion when

they denied Cape access to a Catholic priest; refused to allow a local Catholic Priest entry

into CCC; refused to give Cape the addresses for the local Catholic Church and the Helena

Diocese; denied Cape access to religious materials; and violated his right to equal protection

of the laws when they denied Cape's requests for group prayer or Bible study while

providing these services to other inmates.

¶7 Respondents moved to dismiss Cape's claims pursuant to Rule 12(b)(6), M.R.Civ.P.,

for failure to state a claim upon which relief could be granted. The District Court dismissed

Count I of Cape's complaint pertaining to "religious meals" concluding that Cape had not

alleged any facts evidencing that he is entitled to the relief he sought. The court stated:

> [Cape] asserts Defendants are depriving him of the ability to follow an edict
> or tenet of the Catholic religion requiring the consumption of certain foods
> during certain religious periods. However, [Cape's] pleadings . . . clearly
> indicate the requirement of the Catholic religion during [religious] periods is
> that of *abstinence*, not consumption. [Cape] does not allege Defendants are
> forcing him to consume foods his religion suggests he not consume, or are
> penalizing him for not consuming such foods. Defendants are simply making
> available a variety of foods, and it is [Cape's] choice whether to consume the
> foods, or not to consume the foods and thus follow the apparent tenets of his
> religion.

The District Court also dismissed Hawke and Best Foods from the case on the grounds that

Cape had no viable claim against them.

¶8 On November 4, 2002, the remaining Respondents moved for summary judgment

arguing that the prison policies at issue in this case are valid since they are reasonably related

3

to legitimate penological interests and that Respondents provided Cape with a reasonable opportunity to practice his religion. Cape was transferred from CCC on September 30, 2002. Shortly thereafter, Respondents supplemented their motion arguing that Cape's claims requesting injunctive relief were rendered moot by Cape's transfer out of CCC.

¶9     On January 23, 2003, the District Court granted Respondents' motion for summary judgment and dismissed Cape's claims with prejudice on the grounds that Cape's transfer from CCC rendered his claims moot. From these orders, Cape appeals.

**Standard of Review**

¶10     Pursuant to Rule 12(b)(6), M.R.Civ.P., a complaint should be dismissed where the factual allegations, taken as true, fail to state a claim upon which relief can be granted. *DuBray v. Farmers Ins. Exchange*, 2001 MT 251, ¶ 8, 307 Mont. 134, ¶ 8, 36 P.3d 897, ¶ 8. For purposes of a Rule 12(b)(6) motion, all well-pleaded allegations of fact are taken as true. *DuBray*, ¶ 8. The determination that a complaint fails to state a claim upon which relief can be granted is a conclusion of law which this Court reviews for correctness. *DuBray*, ¶ 8.

¶11     In addition, summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Our standard in reviewing a district court's summary judgment ruling is *de novo*. *Johnson v. Barrett*, 1999 MT 176, ¶ 9, 295 Mont. 254, ¶ 9, 983 P.2d 925, ¶ 9 (citing *Stutzman v. Safeco Ins. Co. of America* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34). We use the same Rule 56, M.R.Civ.P., criteria applied by the district court. *Johnson*, ¶ 9.

4

¶12 Moreover, the party opposing summary judgment must present facts of a substantial nature showing that genuine issues of material fact remain for trial. *Klock v. Town of Cascade* (1997), 284 Mont. 167, 174, 943 P.2d 1262, 1266. Indeed, to avoid summary judgment, the opposing party must present more than conclusory allegations, speculation or denial. The opposing party's facts must be material and of a substantial nature, "not fanciful, frivolous, gauzy, nor merely suspicions." *Klock*, 284 Mont. at 174, 943 P.2d at 1266 (quoting *Fleming v. Fleming Farms, Inc.* (1986), 221 Mont. 237, 241, 717 P.2d 1103, 1105). Furthermore, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment. *Johnson*, ¶ 8 (citing *Schmidt v. Washington Contractors Group*, 1998 MT 194, ¶ 7, 290 Mont. 276, ¶ 7, 964 P.2d 34, ¶ 7).

**Issue 1.**

¶13 *Whether the District Court erred in dismissing Cape's claims that Respondents violated Cape's right to freedom of religion by denying him "religious meals."*

¶14 The District Court dismissed Count I of Cape's complaint pertaining to "religious meals" concluding that Cape had not alleged any facts evidencing that he is entitled to the relief he sought in Count I of his amended complaint regarding "religious meals," thus dismissal of that count was appropriate.

¶15 Cape argues that the District Court erred in dismissing Count I of his complaint because the court is not the arbitrator of religious orthodoxy and it cannot pass judgment on the correctness of his religious beliefs. Cape maintains on appeal that he is required by his religion to abstain from meat on all Fridays throughout Lent and on Ash Wednesday. He

5

also maintains that the consumption of fish is a required part of the "penitential practice" of abstinence.

¶16    Respondents argue, on the other hand, that the District Court properly dismissed Count I of Cape's complaint because Cape failed to set forth factual allegations which, even if accepted as true, would entitle Cape to relief.  Respondents maintain that Cape failed to allege in his complaint that his dietary requests of fish and unleavened bread are essential requirements of a Catholic's diet during Lent and that Cape's minimal, general allegations did not establish a claim upon which relief could be granted.

¶17    Respondents also argue that even if dismissal was inappropriate under Rule 12 standards, which Respondents maintain it was not, the District Court's result was correct. Respondents refer to affidavits attached to their Motion for Summary Judgment from Warden James MacDonald and Father Herbert Joseph Pins, the Catholic chaplain for both Montana State Prison and Montana State Hospital.

¶18    In his affidavit, Warden MacDonald stated that CCC implemented a program in February 2001, where meatless meals are provided to Catholic inmates on Ash Wednesday, Good Friday and all Fridays during Lent.  Warden MacDonald further stated that CCC issued Catholic inmates, including Cape, a card showing that they are entitled to the meatless meals.

¶19    Father Pins stated in his affidavit that the Catholic religion does not require fish to be consumed on days of abstinence from red meat.  On the contrary, a vegetarian diet is acceptable.  Moreover, Father Pins asserted that Catholics are not required to consume

6

unleavened bread during Lent. Father Pins further stated that CCC's new meal program does comply with the requirements of the Catholic faith.

¶20 The First Amendment to the United States Constitution and Article II, Section 5 of the Montana Constitution preserve freedom of religion under the establishment clause and the free exercise clause. However, in order to be protected as a constitutional right, a dietary request must be essential to the practice of a particular religion. *See generally Spies v. Voinovich* (6th Cir. 1999), 173 F.3d 398, 406-07.

¶21 Here, Cape failed to allege that his dietary requests of fish and unleavened bread are essential requirements of a Catholic's diet during Lent. Furthermore, Cape has offered no evidence to contradict either Warden MacDonald's statements regarding the implementation of the meatless meal plan at CCC or Father Pins' statements regarding the dietary requirements of the Catholic religion. Hence, Cape's minimal general allegations do not establish a claim upon which relief can be granted and his conclusory allegations are not sufficient to avoid summary judgment. *Klock*, 284 Mont. at 174, 943 P.2d at 1266. Cape could not have succeeded on his claim because in addition to dismissal, it was also subject to summary judgment.

¶22 Accordingly, we hold that the District Court was correct in dismissing Cape's claims that Respondents violated his right to freedom of religion by denying him "religious meals."

**Issue 2.**

¶23 *Whether the District Court erred in granting Respondents' motion for summary judgment thereby dismissing Cape's other freedom of religion, equal protection, conspiracy and 42 U.S.C. § 1983 claims.*

7

¶24 The District Court granted Respondents' motion for summary judgment on the grounds that the matter is moot because Cape is no longer in the custody of CCC. Cape argues that the District Court erred in denying his claims for declaratory and monetary relief as moot because he could be transferred back to CCC at any time, thus he could suffer the same deprivations of his fundamental rights.

¶25 A question is rendered moot when, due to some event or happening, the issue ceases to exist and the court cannot grant effective relief. *See Grabow v. Montana High School Ass'n*, 2000 MT 159, ¶ 14, 300 Mont. 227, ¶ 14, 3 P.3d 650, ¶ 14 (citing *Shamrock Motors, Inc. v. Ford Motor Co.*, 1999 MT 21, ¶ 19, 293 Mont. 188, ¶ 19, 974 P.2d 1150, ¶19). This Court has recognized an exception to the mootness doctrine for constitutional questions which are capable of repetition yet which could evade review. *Common Cause v. Statutory Committee* (1994), 263 Mont. 324, 328, 868 P.2d 604, 606-07.

¶26 In the case *sub judice*, since Cape has several years yet to serve on his sentence, it is possible that he could be transferred back to CCC and suffer the same alleged deprivations of his rights. Consequently, this is a question that is capable of repetition yet which could evade review and is, thus, an exception to the mootness doctrine.

¶27 Nevertheless, Respondents argue that although the District Court's decision was based solely on the fact that Cape had been transferred from CCC, the court reached the correct result in granting their motion for summary judgment. Hence, Respondents argue that the District Court's decision should be affirmed. We will affirm a correct result reached by a

8

district court even if the reasoning of that correct decision is flawed or incorrect. *See, e.g., Clark v. Eagle Systems, Inc.* (1996), 279 Mont. 279, 286, 927 P.2d 995, 999 (citing *Phillips v. City of Billings* (1988), 233 Mont. 249, 252, 758 P.2d 772, 774).

¶28 Respondents point out that Cape's claims are based on the assumption that he has a constitutional right to the allegedly deprived services and that if such rights exist, they are constitutional and are not subject to restriction, even in a prison environment. Although the right to freedom of religion does not terminate at the prison door, "free exercise rights necessarily are restricted by the fact of incarceration." *Reimers v. Oregon* (9th Cir. 1988), 863 F.2d 630, 631 (citing *McElyea v. Babbitt* (9th Cir. 1987), 833 F.2d 196, 197; *O'Lone v. Estate of Shabazz* (1987), 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282). All that is required is that prisoners be given a reasonable opportunity to exercise their religious freedom and practice their religion. *See, e.g., Blair-Bey v. Nix* (8th Cir. 1992), 963 F.2d 162, 164, *cert. denied*, 506 U.S. 1007, 113 S.Ct. 620, 121 L.Ed.2d 553 (1992) (citing *Cruz v. Beto* (1972), 405 U.S. 319, 322 n.2, 92 S.Ct. 1079, 1081 n.2, 31 L.Ed.2d 263; *Tisdale v. Dobbs* (8th Cir. 1986), 807 F.2d 734, 740).

¶29 Cape does not have a constitutional right of access to a Catholic priest while incarcerated at CCC. *See generally Blair-Bey*, 963 F.2d at 163-64 (citing *Cruz*, 405 U.S. at 322 n.2, 92 S.Ct. at 1081, n.2; *Tisdale*, 807 F.2d at 740; *Reimers*, 863 F.2d at 632; *SapaNajin v. Gunter* (8th Cir. 1988), 857 F.2d 463, 465). Thus, his claims based on this alleged deprivation would fail as a matter of law. Even so, Warden MacDonald asserted in his affidavit that beginning in early 2000, CCC was making efforts to arrange for a Catholic

9

priest to serve CCC inmates. However, the priest that had begun training to serve inmates at CCC, moved from the area and no other priest was immediately available. In August 2000, CCC was able to arrange for another priest to provide services for CCC inmates, including confession and communion in CCC's chapel. Because CCC provided Cape with access to a priest, as well as to Catholic mass, communion and confession, Cape's freedom of religion and equal protection claims based on these alleged deprivations were rendered moot.

¶30    Likewise, Cape's conspiracy and § 1983 claims fail since there has been no deprivation of any constitutional right and because there is no evidence of record supporting either claim. "A civil conspiracy is a combination 'of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *Vieux v. East Bay Regional Park Dist.* (9th Cir. 1990), 906 F.2d 1330, 1343, *cert. denied*, 498 U.S. 967, 111 S.Ct. 430, 112 L.Ed.2d 414 (1990) (quoting *Doleman v. Meiji Mut. Life Ins. Co.* (9th Cir. 1984), 727 F.2d 1480, 1482 n.3). Cape has failed to present any evidence suggesting a civil conspiracy in this case. To the contrary, the record shows that Warden MacDonald addressed Cape's dietary concerns, obtained the services of a Catholic priest, and obtained the proper religious materials. Cape's bare, unsupported, conclusory allegations are insufficient to counter this evidence and to survive summary judgment on this claim.

¶31    In addition, to make out a cause of action under § 1983, a plaintiff must plead that the defendant is acting under the color of state law and that plaintiff has been deprived of his

rights as secured by the federal constitution and federal statutes. *WMX Technologies, Inc. v. Miller* (9th Cir. 1996), 80 F.3d 1315, 1318 (citing *Gibson v. United States* (9th Cir. 1986), 781 F.2d 1334, 1338, *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987)). Here, Cape has failed to allege facts establishing a § 1983 claim and the record contains no evidence supporting such a claim.

¶32 Finally, in his affidavit accompanying Respondents' motion for summary judgment, Warden MacDonald stated that, as a matter of prison policy, CCC does not allow inmates to meet in religious groups without an outside religious volunteer present. He further stated that this is an industry-wide practice designed and intended to avoid gang meetings, or meetings for similar improper purposes, within the prison. This policy follows the requirements of the Montana Department of Corrections (MDOC), which requires supervision of religious meetings by properly screened, interviewed and trained volunteers as well as prison staff. Moreover, Father Pins asserted in his affidavit that the Catholic faith does not require Cape to engage in Bible study groups or to review Catholic literature. Consequently, the denial of Cape's request to hold Bible study groups is valid and lawful since it is "reasonably related to legitimate penological interests." *Turner v. Safley* (1987),

11

482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64.[1] Cape has not presented any evidence to the contrary as required to successfully oppose summary judgment.

¶33    Accordingly, we hold that the District Court did not err in granting Respondents' motion for summary judgment thereby dismissing Cape's freedom of religion, equal protection, conspiracy and 42 U.S.C. § 1983 claims.

¶34    Affirmed.

/S/ JAMES C. NELSON

---

[1] In 1993, Congress enacted the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, *et seq.*, which prohibited federal and state governments from substantially burdening a person's exercise of religion, even as the result of a law of general applicability, unless the government could demonstrate that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1.

However, in 1997, the United States Supreme Court invalidated the RFRA as it applied to states and localities. *City of Boerne v. Flores* (1997), 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624. The Supreme Court held that the scope of the RFRA exceeded Congress's remedial powers under § 5 of the Fourteenth Amendment. *Boerne*, 521 U.S. at 532-36, 117 S.Ct. at 2170-72.

In September 2000, Congress attempted to reinstate the RFRA's protection against government burdens on religious exercise imposed by states and localities by enacting the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et. seq*. The RLUIPA mirrored the provisions of the RFRA, but its scope was limited to laws and regulations concerning land use and institutionalized persons. 42 U.S.C. § 2000cc-1(a).

We express no opinion in the instant case about whether Cape's claims are cognizable under the RLUIPA. Cape brought his claims under the First and Fourteenth Amendments to the United States Constitution; Article II, Sections 4 and 5 of the Montana Constitution; and 42 U.S.C. § 1983. He did not bring his claim under the RLUIPA. Therefore, we need apply only *Turner's* "reasonable relation" standard. *See Henderson v. Terhune* (9th Cir. 2004), 379 F.3d 709, 715 n.1.

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE