FILED

March 29 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0139

DA 15-0139

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 78

MARILYN "MITZI" STONEHOCKER,

        Plaintiff and Appellant,

    v.

GULF INSURANCE COMPANY and TRAVELERS
INDEMNITY COMPANY OF AMERICA,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Ninth Judicial District,
                  In and For the County of Glacier, Cause No. DV 05-15
                  Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                James G. Hunt, Hunt Law Firm, Helena, Montana

        For Appellees:

                Kevin M. Funyak, Stacey & Funyak, Billings, Montana

Submitted on Briefs:  February 17, 2016

Decided:  March 29, 2016

Filed:

                                     Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Marilyn Stonehocker (Stonehocker) was seriously injured while working for her employer, Bear Creek Outfitters Inc. (Bear Creek). Because her injury was caused by the use of her personal automobile, she was able to recover benefits under her auto insurance policy. She then sought benefits under Bear Creek's commercial auto policy, but Bear Creek's insurer, Travelers Indemnity Company (Travelers), denied coverage. Stonehocker brought a claim for coverage in the Ninth Judicial District Court, Glacier County, arguing that she was a named insured under Bear Creek's policy, and that she was occupying a temporary substitute for an insured vehicle at the time of her injury. Stonehocker and Travelers filed cross motions for summary judgment. The District Court granted summary judgment to Travelers on both of Stonehocker's coverage theories. We affirm in part and reverse in part.

## ISSUES

¶2 We address the following issues on appeal:

¶3 Did the District Court err in granting summary judgment to Travelers on the grounds that Stonehocker was not a named insured under the uninsured motorist provision of the Travelers policy?

¶4 Did the District Court err in granting summary judgment to Travelers on the grounds that at the time of Stonehocker's injury her personal pickup was not a "temporary substitute auto" under the Travelers policy?

2

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    Marilyn Stonehocker worked as a camp cook for Bear Creek Outfitters, a guest ranch located west of East Glacier. Bear Creek offered guests the opportunity to accompany wranglers on multi-day cattle drives. Stonehocker owned a 1995 Dodge pickup, which she used to pull an 18-foot gooseneck horse trailer that her husband had modified to include a mobile kitchen and sleeping quarters. Under normal circumstances, Stonehocker would drive her pickup and trailer to each new campsite, and the guests' luggage would be transported in a 1996 GMC Suburban owned and insured by the ranch. Stonehocker stated in her affidavit that "[b]ecause the cook is always the first one up and makes noise when cooking, [her] final evening parking place was always away from the wall tents so [she] did not wake [the guests] when cooking in the morning."

¶6    On June 4 and 5, 2000, as guests were arriving for a cattle drive, Bear Creek's Suburban was undergoing mechanical work and was out of use. Consequently, although Bear Creek normally used its Suburban to transport guests and luggage, Stonehocker used her pickup to transport guests from Cut Bank and East Glacier to the ranch. She had to make multiple trips to transport all the guests because her pickup seats only two people in addition to the driver. Stonehocker then used her pickup and trailer to take the guests' luggage to the first campsite, also a task normally handled by an employee driving Bear Creek's Suburban.

¶7    During the course of the multi-day cattle drive, Stonehocker continued using her pickup and trailer to transport the mobile kitchen and the guests' luggage from campsite to campsite. Each night she would park the pickup near the guests' tents so they would

3

not have far to carry their luggage, and then she would move the pickup away from the tents so as not to disturb the guests in the morning. On the last night of the drive, before moving her pickup away from the guest tents, Stonehocker fell asleep in her trailer with the pickup doors unlocked and the key still in the ignition. She awoke around 5:00 am to the sound of her pickup being started. She saw a man she did not recognize in the driver's seat. The stranger drove the pickup and attached trailer away from the campsite. When Stonehocker realized that her pickup and trailer were being stolen, she called 911. At some point, she either jumped or was thrown from the trailer and sustained a head injury that has prevented her from recalling other details of the incident.

¶8     Stonehocker's pickup was insured by State Farm Insurance Company. State Farm paid Stonehocker the uninsured motorist (UM) benefits owed to her under her policy, but denied liability coverage because the pickup had been stolen by a man who was not a permissive driver under the policy. Stonehocker then sought to recover UM benefits from Bear Creek's corporate auto policy, issued by Travelers.[1] Travelers denied UM coverage to Stonehocker, which resulted in this litigation. The parties filed two sets of cross motions for summary judgment. On July 19, 2012, the District Court found that Stonehocker was not a named insured under Bear Creek's policy and granted Travelers' motion for summary judgment. Then on February 18, 2015, the District Court found that Stonehocker's pickup was not an insured vehicle under Bear Creek's policy and granted Travelers' second motion for summary judgment. Stonehocker appeals from both orders.

---

[1]   Bear Creek's auto policy was issued by Gulf Insurance Company, but Gulf was merged into/acquired by Travelers.

4

## STANDARD OF REVIEW

¶9 We review a district court's entry of summary judgment de novo. *McClue v. Safeco Ins. Co.*, 2015 MT 222, ¶ 8, 380 Mont. 204, 354 P.3d 604 (citing *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704). "Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law." *Albert*, ¶ 15 (citing M. R. Civ. P. 56).

¶10 The interpretation of an insurance contract is a question of law which we review de novo. *Tidyman's Mgmt. Servs. v. Davis*, 2014 MT 205, ¶ 13, 376 Mont. 80, 330 P.3d 1139 (citing *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶¶ 20-24, 370 Mont. 133, 301 P.3d 348).

## DISCUSSION

¶11 The UM portion of Bear Creek's commercial auto policy says that Travelers "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.'" The policy goes on to define an "insured" as "you," a "family member," or "[a]nyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto,'" as long as "[t]he covered 'auto' [is] out of service because of its breakdown, repair, servicing, loss or destruction."

¶12 Stonehocker relied on this language to make two arguments for coverage. First, she argued that as an employee of Bear Creek, she was insured as a "you" under the policy. Second, she argued that her pickup was a temporary substitute for the covered

5

Suburban at the time of her injury, and she is thus entitled to coverage because the Suburban was out of service for repairs.[2] The District Court denied coverage under both theories. We address both arguments below.

¶13 *Did the District Court err in granting summary judgment to Travelers on the grounds that Stonehocker was not a named insured under the uninsured motorist provision of the Travelers policy?*

¶14 The declarations page of Bear Creek's commercial auto insurance policy, entitled "Business Auto Declarations," is addressed to "Bear Creek Outfitters, Inc." and lists the insured's form of business as "Guest Ranch." The "named insured" on the "Montana Uninsured Motorist Coverage" page is also "Bear Creek Outfitters, Inc." Stonehocker argued to the District Court and argues now on appeal that the insured entity under the policy is not a corporation but rather a guest ranch. According to Stonehocker, Montana's statutory definition of "guest ranch," found at § 50-51-102(5), MCA, implies that a guest ranch cannot function without employees, and because Stonehocker is an employee of Bear Creek, she is an insured under the policy. Stonehocker's interpretation of the policy language is incorrect.

¶15 We have had occasion to apply the reasonable expectations doctrine to resolve coverage questions; "the objectively reasonable expectations of insurance purchasers regarding the terms of their policies should be honored." *Am. States Ins. Co. v. Flathead Janitorial & Rug Servs.*, 2015 MT 239, ¶ 22, 380 Mont. 308, 355 P.3d 735. When we

---

[2] Stonehocker raised a third issue—whether ambiguous definitions of "you" in the policy extend UM coverage to Stonehocker—but noted in her brief that if this Court decides in her favor on one or more of the other issues, this Court should decline to reach her ambiguity argument. Because we are reversing the District Court's decision regarding the temporary substitute auto provision, we decline to reach Stonehocker's ambiguity argument.

6

apply the doctrine, we interpret an insurance contract "from the viewpoint of a consumer with average intelligence, with no training in the law or insurance." *Flathead Janitorial*, ¶ 22 (citing *Leibrand v. National Farmers Union Property & Casualty Co.*, 272 Mont. 1, 7, 898 P.2d 1220, 1224 (1995)). The parties agree that Montana law allows an insurer to limit coverage to a corporation or other business entity. *See e.g. Lee v. Great Divide Ins. Co.*, 2008 MT 80, ¶ 16, 342 Mont. 147, 182 P.3d 41 (interpreting a policy that "limit[s] coverage to the corporation and to anyone else occupying a covered auto or temporary substitute for a covered auto").

¶16 The District Court concluded that a reasonable person of average intelligence would understand the insured party under the Travelers policy to be the business entity Bear Creek. We agree. The mailing address on the declarations page is a P.O. Box for "Bear Creek Outfitters, Inc." The "Inc." clearly identifies Bear Creek as a corporate entity. Immediately below the address, the insured's form of business is identified as a "Guest Ranch," thereby indicating the kind of business in which the corporate entity engages. Throughout the rest of the policy, the named insured is identified as "Bear Creek Outfitters, Inc." At no point in the policy is the named insured identified as a human person or persons or as a business entity other than a corporation. A reasonable person of average intelligence would not take the fact that the corporation Bear Creek Outfitters, Inc. engages in the business of operating a guest ranch to mean that an entity other than a corporation is the insured under the policy. Thus, contrary to Stonehocker's assertions, the "You" under "Who Is An Insured" for purposes of UM coverage is the policy holder, Bear Creek.

7

¶17 In previous cases interpreting similar policies under which a corporation was the named insured, "[w]e have not expanded coverage to injured persons involved in the corporation who are not occupying vehicles covered under the policy at the time of the accident." *Lee*, ¶ 16 (citing *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 2003 MT 174, 316 Mont. 382, 73 P.3d 800; *Chilberg v. Rose*, 273 Mont. 414, 903 P.2d 1377 (1995)). Stonehocker is not entitled to UM coverage under the Travelers policy simply because she is an employee of a corporation that operates a guest ranch. The District Court did not err in granting Travelers' motion for summary judgment on this issue.

¶18 *Did the District Court err in granting summary judgment to Travelers on the grounds that at the time of Stonehocker's injury her personal pickup was not a "temporary substitute auto" under the Travelers policy?*

¶19 Stonehocker is entitled to UM coverage under Bear Creek's commercial auto policy if she can prove she was occupying a "temporary substitute for a covered 'auto'" at the time of her injury, and that the covered auto was out of service for repairs. Travelers does not dispute that the covered auto, the 1996 Suburban, was out of use for repairs at the time of Stonehocker's injury. Coverage hinges then on whether Stonehocker's pickup was being used as a temporary substitute for the Suburban at the time of her injury.

¶20 Stonehocker attested in her affidavit that "[t]he Suburban would have normally hauled the guests' luggage but it was not available so I took the guest luggage in my horse trailer to the first night camp." She also attested that

> [a]fter each day during the cattle drive, when camp was moved, I took the guest luggage in my pickup and trailer because the Suburban remained out of order. Although the Suburban could not have pulled the fifth wheel

8

> trailer kitchen and sleeping quarters, if the Suburban had been available, I would not have had the guest luggage in with me.

Travelers did not dispute these facts at any point.

¶21 Stonehocker argued to the District Court that at the time of her injury, her pickup was a temporary substitute for the Suburban because her pickup was being used to store and transport guest luggage, a function normally performed by the Suburban. Travelers responded that Stonehocker must be able to show that she would have been using the insured Suburban at the time of her accident if it had been available, and that because she admitted she would not have been using the Suburban (it would have been driven by another ranch employee), her pickup is not a temporary substitute for the Suburban. In essence, the parties disagree about the proper way to identify a temporary substitute vehicle. According to Stonehocker, the key is similarity of use—the substitute vehicle must have performed substantially the same function the covered vehicle would have performed but for its needed repairs. According to Travelers, the question of similarity of use is only relevant if the claimant can first prove that he or she would have been using the insured vehicle at the time of the accident had it been available. The District Court agreed with Travelers, and concluded that "the undisputed fact that [Stonehocker] would not have been using the Suburban at the time of the underlying accident is fatal to her claim." We disagree, and we now hold that the proper test for identifying a temporary substitute vehicle is whether it is put to the same use to which the covered vehicle would have been put but for its withdrawal from service.

9

¶22 We have no precedent that specifically addresses the issue of what constitutes a temporary substitute vehicle under Montana law. In reaching its conclusion that Stonehocker's pickup was not a temporary substitute for the Suburban, the District Court relied on a Ninth Circuit case originating in Montana, *Progressive Casualty Insurance Co. v. Owen*, 519 F.3d 1035 (9th Cir. 2008), and the Second Edition of *Couch on Insurance*. Our review of the same authority leads us to conclude that the District Court erred in its interpretation of the policy language.

¶23 The policy language at issue says an insured for purposes of UM coverage is "[a]nyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" The term "temporary substitute" is not defined in the policy. A reasonable insurance consumer, *Flathead Janitorial*, ¶ 22, would understand that the word "anyone" indeed means any person, and that the focus of the policy provision is on the vehicle being substituted and not on the person occupying the substituted vehicle. This interpretation is borne out by the Ninth Circuit's application of Montana law and *Couch on Insurance*.

¶24 In *Progressive Casualty Insurance Company v. Owen*, the Ninth Circuit was asked to apply Montana law to interpret a commercial auto policy similar to the one before us now. In that case, Arlene Owen and her husband were the sole shareholders of Owen Trucking, a corporation in the business of hauling talc from talc mines. *Owen*, 519 F.3d at 1037. Owen Trucking, the named insured, had a commercial auto insurance policy issued by Progressive that covered twelve of its vehicles. *Owen*, 519 F.3d at 1037. On the day of the accident that gave rise to the lawsuit, Arlene was helping a friend load hay

10

bales onto a semi-truck owned by the friend. *Owen*, 519 F.3d at 1037. The friend was not an Owen Trucking employee and his truck was not insured under Owen Trucking's policy. *Owen*, 519 F.3d at 1037. While Arlene was standing next to the truck, the hay bales shifted and one bale fell on her, causing serious injury. *Owen*, 519 F.3d at 1037. After exhausting the insurance benefits to which she was entitled under her own auto policy and her friend's auto policy, Arlene sought underinsured (UIM) coverage from Progressive under Owen Trucking's policy. *Owen*, 519 F.3d at 1037.

¶25 The Ninth Circuit concluded that Arlene was not a named insured under the commercial auto policy and that she was not occupying an insured auto at the time of her injury, so she was entitled to coverage only if the semi-truck was a temporary substitute for an Owen Trucking vehicle that was "withdrawn from normal use due to breakdown, repair, servicing, loss, or destruction." *Owen*, 519 F.3d at 1040. In denying Arlene UIM coverage, the Ninth Circuit held that "[t]here is no evidence in the record . . . regarding which covered vehicle or vehicles Arlene would have used but for its unavailability," and that "Progressive is therefore entitled to summary judgment because Arlene has presented no evidence that she was using [her friend's] truck in place of an Owen Trucking vehicle that was withdrawn from use because of breakdown, repair, servicing, loss, or destruction." *Owen*, 519 F.3d at 1040.

¶26 *Owen* differs from the case at bar because in *Owen*, Arlene was unable to satisfy the second requirement of the temporary substitute auto provision: that the covered auto was withdrawn from use for repairs. In the present case, the requirement that the covered auto be withdrawn from use for repairs is established and undisputed. The only

11

remaining question is whether Stonehocker's pickup qualified as a temporary substitute for the out-of-use Suburban. *Owen* does not help this Court answer that question. The District Court incorrectly read into the language of *Owen* a requirement that a claimant first prove that she and no one else would have been using the covered auto before a court needs to address whether the substitute auto was put to a use normally reserved for the insured auto. *Owen* imposes no such requirement.

¶27 The District Court also found that requirement to be imposed on claimants by *Couch on Insurance*. The Second Edition of *Couch*, relied upon by the District Court, provides,

> [a] substitute automobile within the meaning of the substitute automobile policy clause is one actually but only temporarily, used in place of the specified automobile. That is, for the same use the insured car would have been used except for its withdrawal from all normal use because of its breakdown, repair, servicing, loss, or destruction.

12 *Couch on Insurance* 2d (Rev ed) § 45:232 (1981). This emphasis on the use of the vehicle appears in the Third Edition as well: "[u]ninsured motorist (UM)/underinsured motorist (UIM) policies also generally cover a vehicle used temporarily as a substitute for an insured vehicle when the insured vehicle is incapacitated from normal use because of breakdown, repair, servicing, loss, or destruction." 9 *Couch on Insurance* 3d § 123:28 (2015). However, according to the District Court's interpretation, "*Couch* requires that [Stonehocker] show that her personal pickup was actually used as a substitute for the Suburban, and that the Suburban would have been used *by* [*Stonehocker*] for the trip on which her accident occurred had it been available" (emphasis added). The former is the

12

crux of this case; the latter is not a requirement this Court finds to be imposed on claimants by *Couch*.

¶28   A reasonable consumer's interpretation of the policy language at issue in this case, as well as a review of the Ninth Circuit's application of Montana law and an esteemed treatise on insurance law satisfy this Court that the proper test for what constitutes a temporary substitute auto is the use to which it is put, and that a claimant need not first prove that he or she and no one else would have been occupying the covered auto.

¶29   Stonehocker acknowledged that under normal circumstances, she would have driven her pickup with the mobile kitchen in the trailer, and another ranch employee would have driven the guests' luggage in the Suburban. In other words, under normal circumstances, she would not have been driving the covered auto at all. But on the day of her injury, because the Suburban was out of use for repairs, she drove her pickup with both the mobile kitchen and the guests' luggage in the horse trailer. The fact that she would not have driven the Suburban under normal circumstances does not negate the fact that on the day of her injury, she was using her pickup to perform a task normally performed by the Suburban.

¶30   Travelers also emphasizes that Stonehocker had to have her mobile kitchen trailer with her on the cattle drive at all times and, because the Suburban could not tow the gooseneck trailer, Stonehocker would have been driving her pickup truck even if the Suburban had been in good working condition. Travelers argues that Stonehocker's interpretation of the policy improperly would expand coverage to more than one vehicle, as long as each was transporting an item that the Suburban otherwise would have

13

transported. But this argument assumes that the Suburban would not have been used for transporting guests and luggage had it been available, and there is no evidence in the record to support that assumption. Had the Suburban been available and used to transport the guests' luggage, it would be the only vehicle covered by the policy. The critical focus under the temporary substitute auto provision is whether the pickup truck was in fact being used as a substitute for the Suburban.

¶31 Travelers and Stonehocker filed cross motions for summary judgment before the District Court, both arguing that there was no genuine dispute of material fact. Thus, summary judgment is proper if either party can show it is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). As indicated above, Travelers has not disputed Stonehocker's assertion that she had undertaken the responsibility of carrying the guests' luggage in her pickup and trailer on the day her vehicle was stolen, nor has it disputed her contention that, had the Suburban been available, she would not have had the luggage with her that day and she would not have been parked near the guest tents at the time her vehicle was stolen. In fact, Travelers did not file any opposing affidavits contesting Stonehocker's version of these facts.

¶32 In order to prevent the entry of summary judgment, "the party opposing summary judgment must present facts of a substantial nature showing that genuine issues of material fact remain for trial." *Cape v. Crossroads Correctional Ctr.*, 2004 MT 265, ¶ 12, 323 Mont. 140, 99 P.3d 171 (citing *Klock v. Town of Cascade*, 284 Mont. 167, 174, 943 P.2d 1262, 1266 (1997)). "Moreover, the opposing party cannot rest upon mere allegations in the pleadings, but has an affirmative duty to respond by affidavits or other

14

sworn testimony containing material facts that raise genuine issues; conclusory or speculative statements will not suffice." *Klock*, 284 Mont. at 174, 943 P.2d at 1266 (citing *Groshelle v. Reid*, 270 Mont. 443, 447, 893 P.2d 314, 316 (1995)) (internal quotation marks omitted). The entry of summary judgment is proper if the party opposing summary judgment fails to demonstrate the existence of a genuine dispute of material fact. *Pipinich v. Battershell*, 232 Mont. 507, 515, 759 P.2d 148, 153 (1988).

¶33 Stonehocker's undisputed testimony that she was using her pickup to perform a task that the ranch Suburban normally would have performed satisfies the "same use" test. That same use is sufficient to establish that Stonehocker's pickup was a temporary substitute for the Suburban, entitling her to judgment on her coverage claim. Stonehocker need not prove that she and no one else would have been occupying the Suburban on the day of her injury. Since there is no genuine dispute of material fact and Stonehocker is entitled to judgment as a matter of law, the District Court erred in granting summary judgment in favor of Travelers on this issue.

## CONCLUSION

¶34 For the foregoing reasons, we affirm the District Court's July 19, 2012 Order granting Travelers' motion for summary judgment on the issue of whether Stonehocker was a named insured under the Bear Creek commercial auto policy, and we reverse the District Court's February 18, 2015 Order granting Travelers' motion for summary judgment on the issue of whether Stonehocker's pickup was a temporary substitute for a covered auto. We direct the District Court to enter judgment in favor of Stonehocker on her coverage claim.

15

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE