FILED

08/04/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0542

DA 19-0542

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 197N

MERVIN GUNDERSON and PATRICIA GUNDERSON,
husband and wife, and ALL SECURE, INC.,

        Plaintiffs and Appellants,

      v.

LIBERTY MUTUAL INSURANCE and THE OHIO CASUALTY
INSURANCE COMPANY and CENTRAL INSURANCE AGENCY,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-17-767BX
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

      Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

      For Appellees:

      John E. Bohye r, Ryan T. Heuwinkel, Boyer, Erickson, Beaudette &
Tranel, PC, Missoula, Montana

      Nicholas J. Pagnotta, Alexander T. Tsomaya, Williams Law Firm,
Missoula, Montana

Submitted on Briefs:  May 20, 2020

Decided:  August 4, 2020

Filed:

               _____
                          Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Plaintiffs and Appellants Mervin Gunderson (Mervin), Patricia Gunderson (Patricia), and All Secure, Inc. (All Secure), appeal the Order Granting Defendants Liberty Mutual Insurance's and Ohio Casualty Insurance Company's Motion for Summary Judgment and Denying Plaintiffs' Cross-Motion for Summary Judgment issued by the Eighteenth Judicial District Court, Gallatin County, on December 14, 2018, along with the Order Granting Defendant CIA's Motion to Dismiss issued by the District Court on September 6, 2019. We affirm.

¶3 Mervin, who has since passed away, and Patricia were the sole shareholders of All Secure, a security company. In 2015, the Gundersons went to Central Insurance Agency (CIA) to obtain coverage for All Secure's two company vehicles—a 2005 Ford Focus and a 2005 Ford Escape. Through CIA, the Gundersons purchased a business auto policy for All Secure. The policy was issued by Ohio Casualty Insurance Company (OCIC), and provided that the "Named Insured" on the policy was All Secure, a corporation. The policy included Uninsured Motorist (UM) and Medical Payments (MP) coverage on the two company vehicles.

¶4     On April 20, 2016, Mervin was riding his personal motorcycle—insured by State Farm—on Highway 408 near Fairfield when he was involved in a single-vehicle accident. Mervin suffered life-threatening injuries in the crash and was ultimately paralyzed due to his injuries before he later passed away. After the crash, Mervin alleged he was run off the road by an unidentified vehicle. The Montana Vehicle Crash Report prepared by Montana Highway Patrol Trooper Danny Sons reported that Mervin drove off the roadway in a distracted, inattentive, or careless manner. The MHP crash report further states Mervin "was inattentive when he encountered a 90-degree left-hand curve in the roadway. [Mervin] failed to negotiate the left-hand curve and ran off the roadway on the south side." The crash report makes no mention of any other vehicle.

¶5     Following the motorcycle accident, the Gundersons sought coverage under the UM and MP provisions of the OCIC policy. OCIC denied coverage because the Named Insured under the policy was the corporation All Secure, not the Gundersons individually, and Mervin did not qualify as an "insured" under the policy's Declarations. On September 8, 2017, the Gundersons and All Secure initiated the instant lawsuit. The Gundersons sought a declaratory judgment that Mervin was insured under the UM and MP provisions of the policy; Liberty Mutual and OCIC (collectively OCIC) violated Montana's Unfair Trade Practices Act; and CIA committed professional negligence when it sold All Secure the policy at issue in this case.

¶6     OCIC was served with the Complaint and thereafter filed its Answer on October 26, 2017. Then on November 29, 2017, OCIC moved for summary judgment on the two claims

3

against it. At this time, CIA had not yet been served or made an appearance. The Gundersons filed a cross-motion for summary judgment on January 2, 2018. After the parties completed briefing on their competing motions, the District Court held a hearing on May 21, 2018. On December 14, 2018, the District Court issued its order granting OCIC's motion for summary judgment and denying the Gundersons' cross-motion for summary judgment. The District Court entered its Judgment on December 19, 2018.

¶7 Subsequent to the District Court granting summary judgment to OCIC, Gundersons served CIA with the Complaint on December 20, 2018. On January 8, 2019, CIA filed a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6). After the parties briefed CIA's motion to dismiss, the District Court granted the motion on September 6, 2019. The Gundersons and All Secure appeal.

### OCIC's Motion for Summary Judgment

¶8 We review a district court's ruling on a motion for summary judgment de novo, using the same M. R. Civ. P. 56 criteria as the district court. *Norbeck v. Flathead Cty.*, 2019 MT 84, ¶ 12, 395 Mont. 294, 438 P.3d 811 (citing *Chapman v. Maxwell*, 2014 MT 35, ¶ 7, 374 Mont. 12, 322 P.3d 1029). Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Kucera v. City of Billings*, 2020 MT 34, ¶ 6, 399 Mont. 10, 457 P.3d 952 (citing *Davis v. Westphal*, 2017 MT 276, ¶ 9, 389 Mont. 251, 405 P.3d 73). In evaluating a motion for summary judgment, we view the evidence in the light most favorable to the

nonmoving party, drawing all reasonable inferences in their favor. *Hughes v. Lynch*, 2007 MT 177, ¶ 7, 338 Mont. 214, 164 P.3d 913.

¶9 In granting OCIC's motion for summary judgment, the District Court held the Gundersons were not "insureds" pursuant to the All Secure policy with OCIC because Mervin was not operating a covered auto during the accident; that the policy's UM coverage was personal and portable, but only for an "insured"; that the policy did not provide illusory UM and MP coverage; and that the policy was not ambiguous. The District Court further found the Gundersons submitted no competent corroborating evidence the accident was caused by an uninsured motorist.

¶10 On appeal, the Gundersons ask us to review three issues relating to OCIC's motion for summary judgment: (1) whether the policy by its express terms provides for personal and portable MP and UM coverages; (2) whether non-personal and non-portable UM coverage violates § 33-23-201, MCA; and (3) whether the policy is ambiguous and subject to multiple reasonable interpretations.

¶11 We begin by first addressing whether the policy is ambiguous. "The interpretation of an insurance contract is a question of law which we review de novo." *Stonehocker v. Gulf Ins. Co.*, 2016 MT 78, ¶ 10, 383 Mont. 140, 368 P.3d 1187 (citing *Tidyman's Mgmt. Servs. v. Davis*, 2014 MT 205, ¶ 13, 376 Mont. 80, 330 P.3d 1139). "Ambiguity does not exist just because a claimant says so." *Holmstrom v. Mut. Benefit Health & Accident Ass'n*, 139 Mont. 426, 428, 364 P.2d 1065, 1066 (1961).

5

¶12 In this case, the policy was issued to All Secure, a corporation whose business is security. The policy's Declarations provide:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

For both the MP and UM coverages, the covered auto symbol is 2. Symbol 2 applies to "[o]nly those autos you own[.]" The form further notes that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." The only "Named Insured" listed on the Declarations is All Secure. The only vehicles owned by All Secure are the 2005 Ford Focus and 2005 Ford Escape listed in the policy. It is undisputed Mervin was driving his personal motorcycle at the time of the accident, not an auto owned by All Secure. The District Court found "the Declarations make clear that there is only MP and UM coverage for autos owned by All Secure, Inc." We agree.

¶13 The body of the policy further makes clear that the policy "insured" All Secure and its two vehicles, and not the Gundersons personally or their personal vehicles. In the MP coverage, an "insured" is defined as:

> 1. You while "occupying" or, while a pedestrian, when struck by any "auto".
>
> 2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".
>
> 3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss, or destruction.

6

The UM coverage of the policy provides:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle".

The UM coverage defines who is an "insured" under the policy:

> If the Named Insured is designated in the Declarations as:
>
> .   .   .
>
> 2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>     a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
>     b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

¶14 At the time Mervin was injured in the accident, he was driving his personal motorcycle, not either of the vehicles owned by All Secure. Under the clear language of the policy, Mervin does not meet any of the definitions of an "insured" because he was neither the Named Insured nor operating a covered auto at the time of the accident. "We will not expand the terms of a policy to provide coverage when the terms and phrases are clear and unambiguous." *Am. States Ins. Co. v. Flathead Janitorial & Rug Servs.*, 2015 MT 239, ¶ 16, 380 Mont. 308, 355 P.3d 735 (citations omitted). The "you" referenced throughout the policy is the Named Insured—All Secure. This language is not ambiguous. *See Flathead Janitorial*, ¶ 18. For similar reasons, Patricia also does not qualify as an

7

"insured" for her claims under the policy. The District Court correctly found the policy was unambiguous and the Gundersons did not qualify as "insureds" pursuant to the policy's plain language. "It would be unreasonable to expect that a corporate policy of insurance, clearly identifying the named insured as the corporation, would cover [Mervin] when [he] was not occupying a covered vehicle or in any way conducting corporate business." *Flathead Janitorial*, ¶ 22.

¶15 Moving on to the Gundersons' other claims, we begin with whether the policy provides personal and portable MP and UM coverages. We agree with the District Court that the UM coverage provided by the policy is personal and portable, but only for persons who are "insured" under the policy. As discussed above, it is clear the Gundersons are not "insureds" under All Secure's policy.

¶16 The Gundersons assert that pursuant to *Jacobson v. Implement Dealers Mut. Ins. Co.*, 196 Mont. 542, 640 P.2d 908 (1982), OCIC could not limit the personal and portable mandatory UM coverage required by § 33-23-201, MCA. Section 33-23-201(1), MCA, requires UM coverage be offered in all motor vehicle liability policies in Montana, "for the protection of persons insured under the policy[.]" The District Court correctly rejected Gundersons' argument in this regard—most importantly—as the Gundersons are not "insureds" under the policy. The District Court further noted this Court has rejected the "personal and portable" argument asserted by Gundersons in *Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2017 MT 246, ¶ 13, 389 Mont. 48, 403 P.3d 664. The Gundersons argue *Kilby Butte Colony* is inapplicable because it discussed *underinsured*

8

motorist (UIM) coverage, not *uninsured* motorist coverage. We disagree and find *Kilby Butte Colony* to be on point.

¶17 As a preliminary matter, and noted by the District Court in its order and OCIC in its briefing on appeal, we have previously applied the rules from our UIM decisions to the UM context. "In previous cases interpreting similar policies under which a corporation was the named insured, '[w]e have not expanded coverage to injured persons involved in the corporation who are not occupying vehicles covered under the policy at the time of the accident.'" *Stonehocker*, ¶ 17 (citing *Lee v. Great Divide Ins. Co.*, 2008 MT 80, ¶ 16, 342 Mont. 147, 182 P.3d 41). In *Stonehocker*, we noted "Montana law allows an insurer to limit coverage to a corporation or other business entity." *Stonehocker*, ¶ 15 (citing *Lee*, ¶ 16). We further affirmed that "we interpret an insurance contract 'from the viewpoint of a consumer with average intelligence, with no training in the law or insurance.'" *Stonehocker*, ¶ 15 (citing *Flathead Janitorial*, ¶ 22). We addressed a UM policy with a corporation as the named insured and found a "reasonable person of average intelligence" would recognize that the "you" in the policy for purposes of UM coverage was the policy holder—the corporation. *Stonehocker*, ¶ 16.

¶18 As we have previously applied our UIM decisions to UM decisions, we reiterate our decision that an exception to the "personal and portable" rule "exists for corporate or business auto insurance policies that require occupancy of the corporate owned vehicle as a condition of coverage." *Kilby Butte Colony*, ¶ 13. Though the Gundersons refer to the policy as a "dual purpose family/commercial Policy," it is clear the policy at issue is simply

9

a business auto policy, not a "dual purpose family/commercial" one. "The Policy is a business or corporate policy, and 'as long as it is legal for an insurer to sell an automobile liability policy to a corporation, which is the named insured, it is legal for the insurer to limit the class of covered individuals to those who are occupying covered vehicles at the time they are injured.'" *Kilby Butte Colony*, ¶ 15 (quoting *Hanson v. Emp'rs Mut. Cas. Co.*, 336 F. Supp. 2d 1070, 1076 (D. Mont. 2004)). UM coverage is "personal and portable" only for those persons who are insured by the subject policy. The Gundersons are not "insureds" under the policy here and therefore do not qualify for UM coverage. Restricting UM coverage to persons actually covered by the policy does not violate § 33-23-201, MCA, or render any UM coverage OCIC promised to provide to All Secure illusory.

¶19 The policy is unambiguous, the Gundersons do not qualify as "insureds" pursuant to the policy's plain language, and the MP and UM coverage provided by the policy is neither illusory nor violates § 33-23-201, MCA. The District Court correctly granted OCIC's motion for summary judgment.

***CIA's Motion to Dismiss***

¶20 We review a district court's ruling on a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6) de novo. *Cowan v. Cowan*, 2004 MT 97, ¶ 10, 321 Mont. 13, 89 P.3d 6. A motion to dismiss under Rule 12(b)(6) has the effect of admitting all well-pleaded allegations in the complaint. *Wise v. CNH Am., LLC*, 2006 MT 194, ¶ 6, 333 Mont. 181, 142 P.3d 774. We construe the complaint in the light most favorable to the plaintiff, and all allegations

10

of fact contained therein are taken as true. *Wise*, ¶ 6. A court "is under no duty to take as true legal conclusions or allegations that have no factual basis or are contrary to what has already been adjudicated." *Cowan*, ¶ 14 (citation omitted).

¶21 The Gundersons also appeal the District Court's ruling on CIA's motion to dismiss and ask us to review whether the Complaint states a claim against CIA that is plausible on its face. The Gundersons asserted a claim of professional negligence against CIA for not procuring personal and portable UM and MP coverage for the Gundersons under All Secure's policy with OCIC. We agree with the District Court that the Gundersons did not state a cognizable claim against CIA and dismissal of their claim was appropriate.

¶22 The All Secure policy contains the following language:

> 3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":
>
> .  .  .
>
> c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:
>
> (1) Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or
>
> (2) Cause "bodily injury" with no physical contact with an "insured", a covered "auto" or a vehicle an "insured" is "occupying" at the time of the "accident" **provided the facts of the "accident" can be corroborated by competent evidence other than the testimony of any person having a claim** under this or any similar insurance as the result of such "accident".

(Emphasis added.) The District Court, in its order granting OCIC summary judgment, found that even if the Gundersons were "insureds" under the policy—which they are not—they still would not be entitled to UM coverage under the policy because the only testimony

11

to Mervin's claim he was run off the road by an unidentified vehicle was his own affidavit. Patricia also submitted an affidavit attesting to Mervin's story, but she was not present for the accident; thus, the District Court found her affidavit lacked foundation. Regardless, as Patricia also put forth a claim under the policy, her testimony also cannot meet the policy's "competent evidence" requirement. The District Court was presented with no corroborating evidence to support Mervin's story of being run off the road by an unidentified vehicle. The only other competent evidence providing the facts of the accident presented to the District Court was the contrary evidence of the MHP crash report which stated Mervin drove off the road in a distracted, inattentive, or careless manner—with no mention of another vehicle involved. Accordingly, the District Court properly concluded Gundersons had not established, through corroborating evidence, the existence of an uninsured motorist when it granted OCIC's motion for summary judgment.

¶23 CIA was not served with the Complaint in this matter until after the District Court granted OCIC summary judgment and held no corroborating evidence was presented to establish an uninsured motorist existed. After being served, CIA moved to dismiss for failure to state a claim. The District Court granted the motion, holding its decision regarding the uninsured motorist to be the law of the case; that CIA had no legal duty to procure the Gundersons individual MP coverage; and CIA had no heightened duty to inform the Gundersons about the limitations and exclusions of the All Secure policy.

¶24 Regarding the Gundersons' claim against CIA as it related to UM coverage, the District Court took judicial notice of its prior summary judgment decision and held its

12

decision regarding the failure to present the corroborating evidence necessary to establish the existence of an uninsured motorist to be the law of the case. "The 'law of the case' posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Norbeck*, ¶ 26 (citing *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391 (1983)). Where claims are pleaded generally against all defendants, "the legal determinations regarding those claims made by the court during the litigation are applicable to all the parties to the litigation." *Norbeck*, ¶ 28.

¶25 The District Court had already addressed Mervin's claim of being run off the road by an uninsured motorist. The Gundersons were required to put forth competent corroborating evidence to support his claim, but came forth with only their own affidavits.[1] Though the Gundersons now argue pictures of the scene support Mervin's story, those pictures were not before the District Court when it granted summary judgment. "A motion for summary judgment turns on the evidence in the record at the time of the motion." *Masters Group Int'l, Inc. v. Comerica Bank*, 2015 MT 192, ¶ 90, 380 Mont. 1, 352 P.3d 1101 (citing M. R. Civ. P. 56(c)(3)). The District Court correctly applied the law of the case doctrine to bar the Gundersons' claims regarding UM coverage. Because the Gundersons were unable to establish the existence of an uninsured motorist, the Gundersons could not make a cognizable negligence claim for UM coverage.

---

[1] Even if Patricia had not made a claim herself, her affidavit could not serve as corroborating evidence as to the facts of the accident as she was not present at the accident and her affidavit merely reiterated Mervin's rendition of the accident.

¶26 Turning to the Gundersons' claims regarding MP coverage in the policy, the District Court held that claim failed because CIA had no duty to procure MP coverage for the Gundersons. With regard to a negligence claim, "duty is a question of law." *Monroe v. Cogswell Agency*, 2010 MT 134, ¶ 31, 356 Mont. 417, 234 P.3d 79 (citing *Nautilus Ins. Co. v. First Nat'l Ins.*, 254 Mont. 296, 299, 837 P.2d 409, 411 (1992)). "Medical payments coverage is not mandatory in Montana. Its presence in an insurance contract is at the sole discretion of the parties to the contract." *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156, ¶ 36, 343 Mont. 279, 184 P.3d 1021. An insurance agent owes a duty to obtain the insurance coverage "which an insured directs the agent to procure." *Monroe*, ¶ 32. The District Court found the Gundersons' Complaint made no allegation they directed CIA to procure them individual MP coverage or that CIA committed to providing the Gundersons with individual MP coverage. We agree with the District Court.

¶27 For similar reasons, the Gundersons' general claim of professional negligence for CIA breaching its "duty to inform the principals of All Secure, Inc., Mervin Gunderson and Patricia Gunderson regarding the limitations and exclusions that rendered Liberty Mutual's Medical Payments and Uninsured Motorist coverage illusory" also fails. We have never recognized such a heightened duty of care—such as a requirement for an agent to inform all scheduled drivers under a corporate insurance policy of any possible exceptions and limitations they may personally have under the corporation's policy when they are not "insureds" at the time of an off-duty accident in their personal vehicles—and the Gundersons do not put forth a good reason to adopt one now. *See Monroe*, ¶ 31.

14

¶28 On appeal, the Gundersons further argue the District Court should have allowed them leave to amend their Complaint rather than simply dismissing their claims against CIA. A district court should freely allow amendment "when justice so requires." M. R. Civ. P. 15(a)(2). However, "[a] court may properly deny amendment of a pleading if the proposed amendment would be futile as a matter of law." *Peeler v. Rocky Mountain Log Homes Can., Inc.*, 2018 MT 297, ¶ 29, 393 Mont. 396, 431 P.3d 911 (citation omitted). The District Court found leave to amend the Complaint would be futile. We agree. The Gundersons merely made a conditional request to amend their complaint if the District Court was going to dismiss its claims against CIA and did not include a proposed amended complaint or explain what additional factual allegations they would make if allowed to amend their complaint. The District Court correctly refused to "engage in a guessing game" on the substance of the Gundersons' requested amendment and did not abuse its discretion by denying leave to amend the Complaint.

¶29 In conclusion, the All Secure policy was not ambiguous, the Gundersons were not "insureds" under that policy at the time of Mervin's accident, the policy's MP and UM coverage does not violate § 33-23-201, MCA, and the Gundersons failed to state a cognizable claim against CIA. The District Court correctly granted both OCIC's motion for summary judgment and CIA's motion to dismiss.

¶30 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

15

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶31 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA